586 A.2d 967

**Joyce E. WILLIAMSON (Haas), Appellee,**

v.

**Kenneth R. WILLIAMSON, Appellant.**

**Joyce E. WILLIAMSON (Haas), Appellant,**

v.

**Kenneth R. WILLIAMSON, Appellee.**

Superior Court of Pennsylvania.

Argued Oct. 11, 1990.

Filed Feb. 15, 1991.

278

Lee H. Roberts, Lock Haven, for appellant in No. 542 and appellee in No. 562.

John C. Howett, Jr., Harrisburg, for appellant in No. 562 and appellee in No. 542.

Before POPOVICH, HUDOCK and MONTGOMERY, JJ.

POPOVICH, Judge:

This is an appeal[1] from orders of equitable distribution entered in the Court of Common Pleas of Centre County. The orders in question are set forth below, in pertinent part.

AND NOW, this 6th day of June, 1989, the Court orders as follows:

1. Plaintiff is awarded:

| | |
|---|---|
| Marital residence at 532 Rock Road, State College | $110,000.00 |
| Shawnee Village Time–Share | 7,900.00 |
| Personal Property | 10,000.00 |
| Total: | $127,900.00 |

2. Defendant is awarded:

| | |
|---|---|
| Williamson Sports Motors | $ 65,000.00 |
| Vehicles | 18,000.00 |
| IRA account | 7,781.00 |
| Motorcycle | 4,000.00 |
| Beach Craft T34 Aircraft | 55,000.00 |
| Gun Collection | 10,000.00 |
| Twin Commanche | 25,000.00 |
| Total: | $184,781.00 |

---

1. Kenneth Williamson is the appellant in this case. His appeal with this Court is docketed at 542 Harrisburg 1989. Joyce Williamson Haas, the appellee, filed a cross-appeal docketed at 562 Harrisburg 1989.

3. The marital property owned by the parties and located at 532 Rock Road, State College, Pennsylvania, shall be transferred to Plaintiff's name, with Defendant retaining the sole responsibility for the mortgage associated with the residence. If Plaintiff puts up the marital residence for sale, she will be responsible for capital gain tax consequences.

4. Defendant should pay mortgage payments directly to Plaintiff until such time as the mortgage would have been paid in full in accordance with the terms.

5. Defendant shall pay child support to the Plaintiff for their child, Paige, in the amount of $450.00 per month.

6. Defendant is ordered to pay reasonable fees to the Plaintiff's counsel for the amount of $8,000.00.

7. Both parties shall take necessary steps to make order effective within 60 days of this order.

On August 17, 1989, the trial court denied Mr. Williamson's "exceptions" and Mrs. Haas' post-trial motions. On August 18, 1989, the trial court amended its August 17, 1989 order to give Mr. Williamson the right of first refusal to purchase the marital residence in the event that Mrs. Haas decided to sell the house within sixty days for the property's stipulated value of $110,000.00. The amendment also provided that Mr. Williamson would have the right of first refusal at the fair market value of the property if Mrs. Haas exercised her option after the sixty day period had expired. Subsequently, judgment was entered on the record.

Mr. Williamson raises two "catch-all" issues on appeal. He challenges the trial court's award of child support to his minor daughter, claiming that the amount was based on an unsubstantiated earning capacity. He also contests the equitable distribution scheme, asserting that the trial court improperly relied upon the gross value of the residence without deducting the mortgage, improperly considered the

tax consequences of various transactions, double-counted assets, improperly calculated the value of his business as it applied to the issue of distribution and improperly included a value for a gun collection which, allegedly, was non-marital property.

In her cross-appeal, Mrs. Haas raises ten issues. In short, she contends that the trial court abused its discretion in valuing certain property, in determining an appropriate award of child support, in failing to award her a greater amount of attorney's fees and in ignoring procedural deficiencies in Mr. Williamson's "exceptions." Mrs. Haas also asserts that the instant appeal should be dismissed as a result of various defects in Mr. Williamson's appellate brief.

■ Before we reach the merits of both parties' appeals, we note that the issues regarding child support are waived. In its order dated June 6, 1989, the trial court explicitly directed that child support be paid in the amount of $450.00 per month. In accordance with Pa.R.Civ.P. 1920.52(b), claims that involve child support are specifically excluded from matters which require the filing of post-trial motions. Thus, the correct procedure would have been to take a direct appeal from the June 6, 1989 order. *See Scheidemantle v. Senka,* 371 Pa.Super. 500, 538 A.2d 552 (1988). Since neither party accomplished this within thirty days of June 6, 1989, the corresponding issues are waived. Pa.R. A.P. 903(a).

■ However, the economic issues are properly before us. We note our scope and standard of review. Clearly, the trial court maintains discretion in equitably distributing marital property. *Powell v. Powell,* 395 Pa.Super. 345, 577 A.2d 576 (1990); *Williams v. Williams,* 373 Pa.Super. 143, 540 A.2d 563 (1988). This Court will not disturb the trial court's determinations absent an abuse of discretion. *Kleinfelter v. Kleinfelter,* 317 Pa.Super. 282, 463 A.2d 1196 (1983); *Gee v. Gee,* 314 Pa.Super. 31, 460 A.2d 358 (1983). *See Commonwealth ex.rel. Levy v. Levy,* 240 Pa.Super. 168, 361 A.2d 781 (1976) (defines "abuse of discretion").

 Before we embark on a discussion of the instant distribution scheme, we are compelled to remind the parties of the fundamental principle that equitable distribution need not be equal, only *equitable.* In *Fratangelo v. Fratangelo,* 360 Pa.Super. 487, 493–94, 520 A.2d 1195, 1200–01 (1987), this Court clearly held that when a trial court distributes marital property, it must not presume a fifty/fifty division. Rather, the trial court must take account of the factors set forth in the Divorce Code, specifically 23 P.S. § 401(d). *Id.* Then, after full consideration, the trial court must distribute the property in an equitable fashion and in a manner which will promote just results. 23 P.S. § 102(a)(6). This Court will not find an abuse of discretion merely because the parties do not receive equal shares of the marital assets. *See also Brown v. Brown,* 352 Pa.Super. 267, 273–74, 507 A.2d 1223, 1226 (1986) (the trial court may determine, in its discretion, whether a property right was acquired during marriage and whether equity dictates that it be included as part of the marital estate).

 The first question that we must resolve is whether the trial court improperly awarded the marital home to Mrs. Haas at the stipulated value of $110,000.00 without deducting the outstanding mortgage of approximately $27,500.00. The trial court instructed that Mr. Williamson pay the mortgage. He asserts that he should not be responsible for the payments.

Mr. Williamson cites to the Divorce Code, 23 P.S. § 401(e)(7) in support of his position, which provides:

For purposes of this chapter only, "marital property" means all property acquired by either party during the marriage, including the increase in value prior to the date of final separation of any nonmarital property acquired pursuant to paragraphs (1) and (3), except: [. . . .] (7) Property to the extent to which such property has been mortgaged or otherwise encumbered in good faith for value, prior to the date of final separation.

While we are cognizant of the above provision, we are also compelled to defer to the trial court's reasoning regarding

this issue. Clearly, the trial court recognized the value of the mortgage when it equitably divided the property. Additionally, the trial court considered the tax consequences to Mrs. Haas in awarding her the house. At page seven of its opinion, the trial court wrote, "The value of marital residence as stipulated by both parties is $110,000.00. The Plaintiff is entitled to the house but would be responsible for capital gains consequences when the house is sold." *See id.*, June 6, 1989, at 8–9, 11, 17–18 (accord). *See* 23 P.S. 401(d)(10). As well, at page fifteen of its opinion, the trial court stated:

Both parties stipulated the fair market value of the house to be $110,000.00. The joint mortgage balance owed by the parties to Mid–State Bank and Trust Company is about $27,500.00. The equity in jointly owned marital residence of the parties is $82,000.00 [sic]. Considering in totality the circumstances of this case, the Court awards the marital home to the Plaintiff without any encumbrances. Plaintiff substantially contributed to the making of this marital home. In ten years of her marriage with defendant she utilized her skill as a realtor and made profits. Defendant testified that Plaintiff was solely responsible for real estate transactions.

We are satisfied that the trial court fully considered the $27,500.00 outstanding mortgage and "all relevant factors" pertinent thereto before it awarded the marital home to Mrs. Haas. *See* Trial court opinion, June 6, 1989, at 8. *See also* N.T., December 8, 1988, at 147–48. Although the trial court decided to assign responsibility for the mortgage to Mr. Williamson, it also noted that the equitable distribution itself "will effectively give [Mr. Williamson] approximately 60% of the value of marital property, and [Mrs. Haas] approximately 40% thereof." Trial court opinion, June 6, 1989, at 8. We find no error in the trial court's evaluation as it relates to the distribution of the marital residence.[2]

2. We note that Mr. Williamson's argument makes a distinction without a difference. Presently, the trial court determined that Mrs. Haas was entitled to the stipulated value of the marital residence, $110,-000.00. The trial court ordered Mr. Williamson to continue to pay the

■ Mr. Williamson's next issue on appeal—to wit, whether the trial court improperly considered the tax impact for Mrs. Haas in the event that she decides to sell the marital residence, but did not consider the tax impact for Mr. Williamson when he sold his business—is waived. Mr. Williamson failed to raise this issue when he filed his "exceptions" to the trial court's order. Thus, they are not preserved for appellate review. *See* Pa.R.Civ.P. 1920.52(a). *See* Pa.R.Civ.P. 227.1. *See* Pa.R.A.P. 302(a). *See Colagioia v. Colagioia,* 362 Pa.Super. 213, 523 A.2d 1158 (1987) (if an issue is not preserved in a motion for post-trial relief, then the matter is deemed waived on appeal).

■ Mr. Williamson also contends that the trial court counted assets twice, resulting in great economic inequity. We will address this issue in conjunction with Mr. Williamson's next assertion of error; that is, that the trial court "improperly included the value of the business in the marital assets or included it at an improper value." Appellant's brief, at i. After review, we find that the trial court had ample evidence to conclude that $65,000.00 worth of Mr. Williamson's business was subject to equitable distribution. We adopt the trial court's analysis and rationale regarding this issue. *See* Trial court opinion, June 6, 1989, at 2–3, 5, 6–8, 10, 13–14, 16, 17. *See also* Antenuptial Agreement, Exhibit A. In brief, the trial court found that

[Mr. Williamson] owned his business before the marriage. The value of his business at the time of the marriage is determined by this Court to be $65,000.00. The value of

mortgage on the residence which totalled approximately $27,500.00. If Mrs. Haas decided to sell the property, the mortgage would be satisfied from the proceeds of the sale of the home, and Mr. Williamson would then pay a sum of money equal to the satisfied mortgage directly to his ex-wife in accordance with the old mortgage terms. Similarly, the trial court could have effected the same result by awarding to Mrs. Haas the marital residence valued at $82,500.00, the stipulated value of the residence less the outstanding mortgage, and then ordering Mr. Williamson to pay his ex-wife a sum of $27,500 or by distributing to her other marital property valued at $27,500. Pursuant to this scheme, Mrs. Haas would be responsible for the mortgage. However, under either method of distribution, the net result would be the same.

his business when sold in September 1988 was $130,-
000.00 There has been an increase of $65,000.00 which
would be subject to distribution. [. . . .] The court finds
that the value of Williamson Sports Business sold to a
bonafide purchaser to be the actual value of the sale,
$130,000.00. The value of the business not subject to
prenuptial agreement between the parties is $65,000.00.
This $65,000.00 increase in value is marital property.
Trial court opinion, June 6, 1989, at 6–7.

 First, we note Mr. Williamson's argument. He
claims that the trial court assigned an improper value to his
business inasmuch as it failed to consider that the franchise
was owned by his brother, Carl Williamson. Carl William-
son testified that he was a partner in the business and that
he received half of the proceeds when the business was
sold. The trial court explicitly rejected his testimony. *See*
Trial court opinion, June 6, 1989, at 7, 13–14. Clearly, the
finder of fact is entitled to weigh evidence and assess
credibility. *Thomson v. Thomson,* 359 Pa.Super. 540, 519
A.2d 483 (1986); *Wilson v. Benjamin,* 332 Pa.Super. 211,
221, 481 A.2d 328, 333 (1984). The finder of fact may
believe all, part or none of the evidence presented to it.
*Brown v. Brown,* 352 Pa.Super. 267, 507 A.2d 1223 (1986).
We will not disturb the trial court's credibility determina-
tions. *Commonwealth ex rel. Caplan v. Caplan,* 236
Pa.Super. 605, 346 A.2d 822 (1975).

 Second, a review of the trial court's order indicates
that the trial court awarded Mr. Williamson the entire
$65,000.00, representing the increase in the value of his
business from the time of marriage until the time of its
sale. *In addition,* Mr. Williamson received various proper-
ty, which he alleges was purchased with the proceeds of the
sale. He claims that the trial court double-counted assets.

Again, we note that the trial court effectuated a scheme
of *equitable* distribution. We find, especially in light of the
trial court's opinion and order entered after consideration of
Mr. Williamson's "exceptions" to the June 6, 1989 order,
that the trial court recognized the full ramifications of its

distribution decisions. For example, in response to Mr. Williamson's complaint that the Twin Commanche airplane was purchased for $25,000.00 from the same $65,000.00 that resulted from the sale of his business, the trial court responded, "[t]his exception is incorrect because the Twin Commanche was purchased with marital assets or the proceeds of marital assets." This indicates to us not double-counting, but rather that Mr. Williamson used other funds, aside from the money that he received from the sale of his business, to purchase the additional items. *See, for ex.,* N.T., December 9, 1988, at 78–80 (wherein Mr. Williamson admitted to storing up to $50,000.00 cash in his refrigerator). *See id.* at 76–80.

We find no evidence in the record, other than Mr. Williamson's own oral testimony, to substantiate his claim that he actually acquired the items, set forth in the trial court's order, with the proceeds of the business. Conversely, we conclude it reasonable that the trial court traced these purchases to the proceeds gained through the disposition of other marital assets.

The law on this issue was articulated in *Anthony v. Anthony*, 355 Pa.Super. 589, 514 A.2d 91 (1986), wherein this Court held that marital property includes any accretion in the value of pre-marital property, regardless of whether that property was exchanged for other property. In *Diamond v. Diamond*, 360 Pa.Super. 101, 519 A.2d 1012 (1987), this Court reiterated the same proposition, stating:

> We are not concerned that assets in the marital estate used for post-separation acquisitions will not be calculated as marital property. It is clear that assets in or to which the marital estate is entitled at the time of separation are includable as marital property. It is, therefore, irrelevant in determining the marital estate that those assets are later used in post-separation acquisitions. *Anthony*, 355 Pa.Super. 589, 514 A.2d 91.

*Diamond*, 360 Pa.Super. at 108, 519 A.2d at 1015.

■ Finally, Williamson contends that the trial court improperly included the value of a gun collection which was

nonmarital property. We must reject this claim because the trial court explicitly weighed Mr. Williamson's testimony against that of Mrs. Haas and accepted Mrs. Haas' testimony, inventory and appraisement relative to this issue. *See* Opinion and Order, August 17, 1989, at 3. *See* N.T., December 8, 1988, at 99–100. Additionally, Mr. Williamson testified that he currently possesses seven handguns and six rifles and shotguns. Approximately one half of these guns were owned by him prior to the marriage. *Id.* at 290–91. Although the trial court rejected Mr. Williamson's valuation, the import of his testimony lies in his implicit admission that he acquired firearms during the marriage. Property acquired during marriage is subject to equitable distribution. 23 P.S. § 401(e).

We now turn to Mrs. Haas' claims, set forth in her cross-appeal. We will address these in random order, as some of Mrs. Haas' issues may be more easily resolved than others.

As stated previously, the issues involving child support are deemed waived. In a two-fold analysis, we can also dismiss Mrs. Haas' allegations of procedural violations on the part of Mr. Williamson. Mrs. Haas asserts that the trial court abused its discretion in failing to dismiss Mr. Williamson's "exceptions" for his failure to comply with Pa.R.Civ.P. 1920.52 and Pa.R.Civ.P. 227.1. In particular, Mrs. Haas "respectfully submits that Williamson's 'Exceptions to Opinion and Order of the Court dated June 6, 1989' failed to specify where the grounds for each 'Exception' had been asserted in pre-trial proceedings or at trial on the matter." Appellee's brief, at 57.

Nevertheless, the trial court addressed each "exception" and set forth its reasons for each denial. *See* Trial court opinion, August 17, 1989. Inasmuch as the trial court provided this Court with explanations for its decision on each "exception," we were inclined to review the issues properly preserved in Mr. Williamson's appeal. *See Commonwealth v. Sheaff,* 518 Pa. 655, 544 A.2d 1342 (1988) (defendant's failure to secure formal allowance of supple-

mental motions nunc pro tunc did not preclude an appeal where the trial court nevertheless entertained defendant's claims).

■ Mrs. Haas also contends that this Court should dismiss Mr. Williamson's appeal in light of his failure to conform his brief to the mandates of Pa.R.A.P. 2154(a) and Pa.R.A.P. 2117(a)(4). While this Court in no way condones procedural violations, we are also cognizant of Pa.R.A.P. 105 and Pa.R.Civ.P. 126 which provide for the liberal construction of the rules "to secure the just, speedy and inexpensive determination of every matter to which they are applicable." Pa.R.A.P. 105. Given the complexity of this case, we have reviewed the record in its entirety. The parties have not been prejudiced by the minor procedural violations. Thus, we decline to dismiss Mr. Williamson's appeal in this case for noncompliance with the procedural rules.

■ Mrs. Haas asks whether the trial court abused its discretion in failing to award her a greater sum for counsel fees, costs and expenses. The law is clearly against Mrs. Haas in this case. First, we will not disturb the trial court's conclusion that $8,000.00 represented reasonable counsel fees and costs. The award of counsel fees is within the trial court's discretion. 23 P.S. § 401(b); 23 P.S. § 502, *Johnson v. Johnson,* 365 Pa.Super. 409, 529 A.2d 1123 (1987).[3] The award is not automatic. *Dech v. Dech,* 342 Pa.Super. 17, 492 A.2d 41 (1985). In fact, where the recipient has other sources of income, including pre-separation money from the former spouse, an award of counsel fees may be tempered. *Murray v. Murray,* 80 Pa.Super. 573 (1923); *Hoover v. Hoover,* 288 Pa.Super. 159, 431 A.2d 337 (1981).

**3.** The amount of the award of counsel fees, costs and expenses is also within the discretion of the trial court and is subject to an abuse of discretion standard on appeal. *Thomson v. Thomson,* 359 Pa.Super. 540, 519 A.2d 483 (1986); *Benson v. Benson,* 357 Pa.Super. 166, 515 A.2d 917 (1986).

■ Here, Mrs. Haas alleges that she has incurred approximately $20,000.00 in counsel fees, costs and expenses. The trial court awarded her $8,000.00, almost one-half of the total amount expended. An award of counsel fees is not intended to reimburse one party in full for his or her legal costs. *Brong v. Brong*, 129 Pa.Super. 224, 195 A. 439 (1937). Rather, the amount awarded should be sufficient so as to advance just results and to place the litigants on equal footing. *Wechsler v. Wechsler*, 242 Pa. Super. 356, 363 A.2d 1307 (1976). We feel that this end was satisfied in this case.

Although Mrs. Haas alleges that she has incurred a $20,000.00 debt due to Mr. Williamson's failure to cooperate, Mr. Williamson argues exactly to the contrary and in fact contends that Mrs. Haas was to blame for certain problems. This Court will not engage in a re-evaluation of the parties' credibility, nor will we re-calculate what the trial court considered to be a fair and reasonable award to Mrs. Haas. Second, considering Mrs. Haas' distributive portion and current financial status, there is absolutely no indication that she is entitled to additional attorneys fees, cost and expenses.

■ This Court also rejects Mrs. Haas' claim that she is entitled to an award of counsel fees pursuant to Pa.R.A.P. 2744(1). While we are aware that this litigation has been complicated and protracted, we find no reason to penalize Mr. Williamson through the invocation of Pa.R.A.P. 2744(1). In fact, we are in complete agreement with Mr. Williamson's position that he should not be discouraged from exercising his right to appeal for fear that sanctions will be imposed.

■ Mrs. Haas has raised three issues which we can dispose of summarily. She contends that the trial court abused its discretion in assigning values for equitable distribution purposes to (1) the marital Beechcraft T–34 aircraft;[4] (2) the time-share condominium interest owned by

4. *See* N.T., December 9, 1988, at 96–97.

her;[5] and (3) the personal property that she received.

█ The parties testified as to each of these issues before the trial court. An owner of property is competent to testify and is considered an expert when offering evidence as to a property's value. *Semasek v. Semasek*, 509 Pa. 282, 502 A.2d 109 (1985). The finder of fact is entitled to accept or reject any or all of the testimony gleaned at the proceedings. *Aletto v. Aletto*, 371 Pa.Super. 230, 537 A.2d 1383 (1988). Based on the record before us, we find no error in the trial court's valuations. *See LaBuda v. LaBuda*, 349 Pa.Super. 524, 503 A.2d 971 (1986); *Semasek v. Semasek*, 331 Pa.Super. 1, 479 A.2d 1047 (1984), *rev'd on other grounds*, 509 Pa. 282, 502 A.2d 109 (1985) (discusses methods of valuation); *Aletto v. Aletto*, 371 Pa.Super. 230, 537 A.2d 1383 (1988) (trial court must use its discretion in valuing property and may average disparate appraisals); *Fitzpatrick v. Fitzpatrick*, 377 Pa.Super. 268, 547 A.2d 362 (1988) (trial court may reject evidence offered by both parties in favor of its own valuation method). Furthermore, the trial court provided this Court with its reasons for assigning the various values. *See Ruth v. Ruth*, 316 Pa.Super. 282, 462 A.2d 1351 (1983).[6]

Finally, Mrs. Haas contends that the trial court abused its discretion in finding that the antenuptial agreement entered into between the parties protected Mr. Williamson's interest

5. *See* N.T., December 8, 1988, at 105–108.

6. Interestingly, Mrs. Haas advances an argument in her brief to the effect that the value of her time-share interest in the Shawnee condominium is *less* than that which the trial court assigned to it. *See* Appellee's brief, at 41–42. She asserts that the time-share interest carried with it a debt of $5,976.00, which debt should have been deducted pursuant to 23 P.S. § 401(e)(7). We will not reach the merits of this issue, because Mrs. Haas is not an aggrieved party within the meaning of Pa.R.A.P. 501. *See Green by Green v. SEPTA*, 380 Pa.Super. 268, 551 A.2d 578 (1988). We fail to see how Mrs. Haas, the prevailing party here, was in any way adversely affected by the trial court's valuation. Numbers aside, the trial court simply effected an *equitable* distribution. It also took into account testimony and documented evidence by which it could justly conclude that $7,900.00 was a fair valuation for the time-share interest. We note that Mrs. Haas, by her own testimony, valued the interest at $7,900.00. N.T., December 8, 1988, at 108.

in his business "in an amount unsubstantiated by the evidence presented at [the] hearing" and in its determination of the increase in value of the business between the date of marriage and the date of sale. We acknowledge Mrs. Haas' concern that the trial court misinterpreted the antenuptial agreement and neglected to exclude certain personal property from the financial data sheet for distribution purposes.[7] However, we also appreciate the purpose of an antenuptial agreement. *See Simeone v. Simeone*, 525 Pa. 392, 581 A.2d 162 (1990). Thus, while we understand Mrs. Haas' position, we still must reject her theory and agree with the trial court's evaluation in this case.

In particular, we note the provision in the antenuptial agreement that states, "The parties hereto covenant, agree and understand that the value of the aforementioned real property and motorcycle dealership business at the time of the signing of this agreement is fully and accurately set forth in Exhibit 'A' attached hereto and made part hereof." Agreement, at 4. Evidently, it was Mr. Williamson's intent to exclude from the marital estate, through the execution of the antenuptial agreement, the value of all of the property listed in Exhibit A.

In *Raiken v. Mellon*, 399 Pa.Super. 192, 582 A.2d 11 (1990), this Court stated:

Prenuptial agreements are contracts, and, as such, should be evaluated under the same criteria as are applicable to other types of contracts. When interpreting a prenuptial agreement, the court, as in dealing with an ordinary contract, must determine the intention of the parties. When the words of a contract are clear and unambiguous, the intent of the parties is to be discovered from the express language of the agreement. Where ambiguity exists, however, the courts are free to construe the terms

7. Mrs. Haas basically argues that the "other assets" listed on the financial statement are personal property and not business assets. We agree with Mr. Williamson that this interpretation is a matter of labeling and largely an exercise in semantics.

against the drafter and to consider extrinsic evidence in so doing.

*Id.*, 399 Pa.Superior Ct. at 197–198, 582 A.2d at 13 (citations omitted).

██ The evidence in this case provides ample support for the trial court's conclusion that at the time of the marriage, Mr. Williamson's business was worth $65,000.00. This Court cannot help but be persuaded by the original valuation of Mr. Williamson's business. The document titled "Financial Statement for Individual Partnership or Corporation" estimated Mr. Williamson's net worth to be $67,990.21. This paper is attached to the parties' antenuptial agreement. The financial statement, which intended to protect Mr. Williamson's pre-marriage interests, is dated October 24, 1972. He married Mrs. Haas on December 23, 1972. This piece of evidence alone lends more than sufficient support for the trial court's conclusion that the antenuptial agreement sheltered Mr. Williamson's interests to the extent of $65,000.00.

The trial court clearly considered the wording of the antenuptial agreement, its purported intent, the contents of the financial statement and the additional testimony gleaned at the hearing in this case. All of the relevant evidence was evaluated at the hearing and subsequently, presumably in conjunction with the parties' post-trial claims. Following a lengthy discussion in its opinion, dated June 6, 1989, the trial court reiterated its conclusion that $65,000.00 represented a fair valuation of Mr. Williamson's business.

██ Mr. Williamson's business was sold for $130,000.00. The increase in value during the marriage, therefore, was $65,000.00. ($130,000.00 − $65,000.00 = $65,000.00). Because Mrs. Haas did not contribute substantially to the business, the trial court, in its discretion, effected an *equitable* distribution and awarded the entire value to Mr. Williamson. We find no error, either in the trial court's valuation or in the distribution scheme. Furthermore, the trial court reasonably interpreted the antenuptial contract

and we find no error in this regard. *See Raiken v. Mellon, supra.*

Unfortunately, despite our conclusion that the trial court's scheme of equitable distribution was fair, we cannot affirm the trial court's orders in their entirety. The trial court failed to correct its confessed error in including the 1987 Chevrolet van as a vehicle subject to distribution. *See* Trial court opinion, August 17, 1989, at 3. It is unclear whether the $18,000.00 value assigned to the vehicles existing at separation actually included the value of the van.

Since this Court cannot ignore an admitted mistake on the part of the trial court, we remand for consideration of this issue, and for possible re-valuation of Mr. Williamson's interests.

For the foregoing reasons, we affirm the orders of the trial court in material part, but remand for clarification consistent with the dictates of this opinion.

Jurisdiction relinquished.