690 A.2d 299

Daniel MENNA, Administrator of the Estate
of Bernice Menna, Deceased, Appellant,

v.

ST. AGNES MEDICAL CENTER, Bernard Segal
and Likoff Segal Associates, Appellees.

The ESTATE OF Bernice MENNA, Daniel Menna, individually
and as Administrator of the Estate of Bernice Menna,
Appellants,

v.

Bernard L. SEGAL, M.D., and McWilliams and Mintzer,
P.C., and Anthony F. Zabick, Jr., Esquire, and
Daniel T. McWilliams, Esquire, Appellees.

The ESTATE OF Bernice MENNA, Daniel Menna, individually
and as Administrator of the Estate of Bernice Menna,
Appellants,

v.

Bernard L. SEGAL, M.D., and McWilliams and Mintzer,
P.C., and Anthony F. Zabick, Jr., Esquire, and
Daniel T. McWilliams, Esquire, Appellees.

Superior Court of Pennsylvania.

Argued Jan. 16, 1997.

Filed Feb. 27, 1997.

302

John J. O'Brien, III, Wynnewood, for appellants.

James L. Griffith, Philadelphia, for Segal and Likoff Segal Associates, appellees.

H. Robert Fiebach, Philadelphia, for McWilliams and Mintzer, P.C., and Zabick, appellees.

Before DEL SOLE, POPOVICH and OLSZEWSKI, JJ.

OLSZEWSKI, Judge:

If at first you don't succeed, sue, sue again. This, apparently, is appellant's adopted mantra, spurring him to reincarnate the instant action seven times over the past decade. Like a Phoenix rising from the ashes, this case once again appears on our docket. While the zealous protection of one's rights is to be admired, there comes a time when one's zealous advocacy can better be described as vexatious, malicious and frivolous. Such is the present case.

Although exhausting and at times confusing, a thorough review of the facts, parties and procedural history is necessary in order to provide meaningful review and dispensation of the varied claims raised herein. The genesis of this flurry of litigation is a medical malpractice claim that arose from the treatment that appellant's mother received at the St. Agnes Medical Center in early 1984. Twice during February of that year, Bernice Menna was admitted to St. Agnes, treated by Dr. Bernard Segal and then discharged. Soon after the second discharge, Mrs. Menna was admitted to Albert Einstein University Hospital–Southern, and was diagnosed as having been the victim of an untreated stroke.

As a result of this diagnosis, in April of 1985, Mrs. Menna initiated a medical malpractice claim against Dr. Segal, St. Agnes Medical Center and Likoff–Segal Associates (LSA), Dr. Segal's medical practice group (*Menna I* ). At that time, Mrs. Menna was represented by the Pelagatti–Bruccoleri firm. Approximately two months thereafter, Mrs. Menna died and Daniel Menna, as administrator of her estate, was substituted as plaintiff.

In August of 1987, by stipulation of the parties and court approval, the St. Agnes Medical Center was dismissed with prejudice from the case. Over two years later, in January of 1990, plaintiff's counsel withdrew his appearance and was replaced by John J. O'Brien III, Esquire, decedent's son-in-law. Soon thereafter, Attorney O'Brien filed motions seeking to amend the original complaint in *Menna I* and to strike the discontinuance of St. Agnes Medical Center. Both of these

motions were denied by the trial court and appealed to this Court.

Prior to the dispensation of the *Menna I* appeal discussed above, appellant filed a second suit (*Menna II* ) which included, *inter alia,* the causes of action that were the subject of the motion to amend the *Menna I* complaint. Because of the ongoing nature of the *Menna I* appeal, St. Agnes' preliminary objections were granted on the basis of *lis pendens.* Once again, appellant appealed to this Court. The *Menna I* and *II* appeals were consolidated and the orders of the lower court were affirmed and remanded by this Court in April of 1991.

*Menna I* then proceeded through the usual pre-trial procedures. During discovery, appellant wrote to the attorney representing Dr. Segal and LSA requesting the decedent's medical records. In response, appellant was informed that the custodian of the records was the St. Agnes Medical Center and that all correspondence relating to their production should properly be directed to St. Agnes' counsel. In May of 1993, after nearly seven years of litigation, the parties reached a settlement with respect to the claims against Dr. Segal and LSA. A joint tortfeasor release was drafted and executed.

Following the *Menna I* settlement, appellant filed a legal malpractice action (*Menna III* ) against Gustine Pelagatti, Esquire and his association, Pelagatti–Bruccoleri. Appellant averred that the firm had not properly handled the *Menna I* case and that, as a result of the firm's negligence, the case was settled for a sum not reflective of the defendant's liability. As a result of this new litigation, the firm scheduled the deposition of Dr. Segal. During the deposition, a copy of the decedent's medical records was found in the possession of the Pelagatti–Bruccoleri firm's attorney.

Appellant claimed that the medical records found in the possession of his former attorney were after-discovered evidence. Based upon this theory, appellant reinitiated his effort to strike the discontinuance of St. Agnes, claiming that the records had been concealed by the hospital. A total of three motions to this effect were filed and denied by the trial court.

Appeal was taken to this Court which, in July of 1995, affirmed the lower court. In so doing, this Court held that the records were not concealed by St. Agnes due to the fact that a complete set had been furnished to appellant's former counsel. Moreover, this Court questioned the propriety of the initial disclosure in that portions of the record were subject to statutory privilege and were thus non-discoverable.

The legal malpractice claim advanced in *Menna III* was ultimately disposed of by summary judgment in favor of the defendant attorneys. Once again, appeal was taken to this Court and the order of the trial court was affirmed.

Perhaps finding our forum not advantageous to his interests, appellant then filed suit in the United States District Court for the Eastern District of Pennsylvania (*Menna IV*). This suit was brought against St. Agnes and was based upon the alleged concealment of medical records that was the basis of the previous appeal to this Court. Appellant was not successful in this suit or in his subsequent appeal to the United States Court of Appeals for the Third Circuit.

Undeterred, appellant then filed suit in January of 1996 against Dr. Segal, his attorneys and their firm (*Menna V*). The complaint alleged that the defendants had concealed the medical records from appellant in *Menna I*. Preliminary objections were filed asserting that appellant was estopped from relitigating the concealment issue. The trial court agreed and sustained the objections, holding that this Court's memorandum decision in *Menna I* disposed of the issue. That decision has been appealed to this Court at Nos.2031 and 2032 PHL 1996.

Finally, appellant's unflagging belief that his rights have been trampled upon spawned a sixth lawsuit. This suit, filed in February of 1996 against Dr. Segal, LSA and St. Agnes Medical Center, sought to rescind the settlement reached in *Menna I* years earlier (*Menna VI*). Yet again, the basis of appellant's effort to set aside the settlement was the alleged concealment of medical records. Finding that this issue had been fully and finally litigated, the trial court denied appel-

lant's motion. That decision is the basis of the appeal docketed at No. 1851 PHL 1996.[1]

Because appellant has based his averments in both of these appeals on the alleged wrongful concealment of medical records, and because all of the defendant appellees have asserted that appellant is estopped from raising this issue, this Court will consolidate the appeals for discussion and disposition.

■ Collateral estoppel, now more commonly referred to as issue preclusion, is a doctrine that works to prevent an issue that has already been fully and fairly litigated from being raised again in a subsequent suit. *See, e.g., Capobianchi v. BIC Corp.,* 446 Pa.Super. 130, 137–39, 666 A.2d 344, 348 (1995); *Ammon v. McCloskey,* 440 Pa.Super. 251, 259–61, 655 A.2d 549, 553 (1995). In order for the doctrine to be applicable, the following four elements must be met: (1) an identity of issues between the present and former actions; (2) a final judgment on the merits; (3) the party against whom the doctrine is asserted must have been a party, or be in privity with a party, to the prior action; and (4) the party against whom the doctrine is asserted must have been afforded a full and fair opportunity to litigate the issue in question. *Id.*

■ Presently, we find that all four elements are present and therefore hold that appellant is estopped from relitigating the issue of whether any of these parties concealed the decedent's medical records. On July 26, 1995, a panel of this Court issued a memorandum decision in *Menna v. St. Agnes Medical Center et. al.,* docketed at No. 3779 PHL 1994, 447 Pa.Super. 643, 668 A.2d 1204. This appeal was generated from the trial court's refusal to strike the discontinuance of St. Agnes based upon purported after-discovered evidence. Spe-

1. The seventh suit referred to in the opening paragraph of this opinion is currently in litigation in Philadelphia County. Captioned *Menna v. Gustine Pelagatti and Stephen Bruccoleri,* No. 0356 January Term, 1996, it is another legal malpractice action. We also note that the remaining claims in *Menna II,* not disposed of by this Court, are the subject of ongoing litigation at the trial court level in the form of a motion for judgment on the pleadings filed by the defendants.

cifically, appellant claimed that St. Agnes had intentionally defrauded appellant by concealing the documents in question.

In disposing of appellant's claim, we held that "St. Agnes could not 'conceal' documents which were turned over to appellant's former attorney during his representation of appellant." *Id.* at 3. Further, because portions of the records contained information that was subject to privilege under the Pennsylvania Peer Review Protection Act, we questioned the propriety of the scope of the initial disclosure. In any event, the full disclosure to appellant's former attorney rendered moot any claims of concealment against St. Agnes, Dr. Segal or LSA.

With respect to the third element of the estoppel test, we note that there is no requirement that the party asserting preclusion have been a party to the prior action. Rather, it is the party against whom the doctrine is asserted that must have been a party in the previous litigation. Therefore, it is of no consequence that several of the appellees at Nos.2031 and 2032 PHL 1996 were not involved in the prior appeal.

In sum, we find that there exists an identity of issues, this Court entered a final judgment on the matter, appellant was a party in the prior action and appellant had a full and fair opportunity to litigate the issue on the merits. Re-evaluation would necessarily be unwarranted, ill advised and improper.

Perhaps recognizing that the estoppel doctrine could preclude him from further advancing his cause, appellant has asserted that the doctrine is not applicable in the instant matter because intentional conduct has been averred and because there has been a significant modification of facts. After careful review, we find no merit in these assertions.

Appellant's position that claims based upon intentional fraud are exempted from the estoppel bar presents an argument of amazing circuity. Indeed, rather than present a substantial issue for appeal, appellant's argument does more to advance the position that estoppel should apply. Where the underlying factual issue upon which a claim of fraud is based has been previously litigated and fully resolved, the claim is then sub-

ject to the same rigors as all other claims. *See, e.g., Blake v. Garvin,* 403 Pa.Super. 208, 210–11, 588 A.2d 553, 555 (1991) (estoppel was appropriate to prevent appellant from relitigating the issue of whether his former spouse's attorney submitted fraudulently prepared bills). Were this not true, the prior determination would be of no effect.[2]

Next, we consider whether there has been a significant change in facts such that the estoppel bar should not be applied. Substantial modification in either fact or law may sometimes be an appropriate ground for avoiding estoppel. *See, e.g., Clark v. Troutman,* 509 Pa. 336, 339–45, 502 A.2d 137, 139–41 (1985); *Piso v. Weirton Steel Co.,* 235 Pa.Super. 517, 528–30, 345 A.2d 728, 734 (1975). We find, however, that no such change in fact or law has occurred in the present case. All of the purported evidence and averments currently brought forth by appellant are reiterations of conduct that occurred and was known to appellant before 1994. As such, the 1995 memorandum decision of this Court is fully dispositive and controlling in the instant appeal.

■ In addition to the bar that the estoppel doctrine creates to appellant's causes of action, we also find that the outcome of the present appeals is controlled by the law of the case doctrine. "This doctrine refers to a family of rules which embody the concept that a court involved in the later phases of a litigated matter should not reopen questions decided by another judge of that same court or by a higher court in the earlier phases of the matter." *Commonwealth v. Starr,* 541 Pa. 564, 574, 664 A.2d 1326, 1331 (1995). Specifically prohibited is the alteration by an appellate court of a legal question previously decided by the same court. *Id.* As with the issue preclusion doctrine, the rationale underlying the law of the case doctrine is the protection of the parties' expectations, the

**2.** We find it appropriate to distinguish the present scenario from one in which a party seeks vindication from an adverse judgment based upon newly discovered fraudulent behavior. In that case, the issue of whether fraud existed would not have been previously litigated and the estoppel doctrine would be inapplicable.

finality of litigation and the promotion of a settled, efficient and streamlined system of justice. *Id.*

Even a cursory review of this Court's memorandum decision filed at No. 3779 PHL 1994 leads to the conclusion that, not only is appellant barred by estoppel from bringing the present appeal, but this Court is barred by operation of the law of the case doctrine from considering its merits. A panel of our distinguished brethren has considered and passed upon the concealment issue in this matter. The fact that appellant steadfastly maintains that the incorrect result was reached does not allow this panel to circumvent the established legal principles which control the matter.

Having disposed of appellant's issue, we now consider the requests of appellees Segal and LSA that this Court assess attorney's fees against appellant and his counsel and enjoin appellant from relitigating this issue in the future.

■ Pursuant to Pa.R.A.P. 2744, an appellate court may, it its discretion, award reasonable counsel fees against a party who has filed a frivolous appeal or whose behavior has been dilatory, obdurate or vexatious. In determining the propriety of such an award, we are ever guided by the principle that an appeal is not frivolous simply because it lacks merit. Rather, it must be found that the appeal has no basis in law or fact. *See, e.g., Winpenny v. Winpenny,* 434 Pa.Super. 348, 354–55, 643 A.2d 677, 680 (1994). This high standard is imposed in order to avoid discouraging litigants from bringing appeals for fear of being wrongfully sanctioned. *See, e.g., Murphy v. Murphy,* 410 Pa.Super. 146, 157–59, 599 A.2d 647, 653 (1991); *Williamson v. Williamson,* 402 Pa.Super. 276, 291–93, 586 A.2d 967, 975 (1991).

■ Applying this standard, we find that such an award is not only appropriate in the instant matter, but is perhaps necessary in order to avoid yet more repetitions of this appeal in the years to come. As previously discussed, the voluminous and protracted history of this case amply demonstrates that the present appeals had no likelihood of success. Indeed,

several legal doctrines and copious caselaw unequivocally demonstrates just the opposite.

Undeterred, for reasons which this Court can only describe as vexatious, obdurate and dilatory, appellant has continued time and again to file suits alleging the same wrongful conduct. This serial litigation must be stopped. To do otherwise would be to permit the flagrant abuse of our judicial system and the ongoing subversion of appellees' right to consider this matter settled.

Accordingly, we hold that appellant and his counsel, jointly and severally, are to reimburse appellees for the reasonable cost of their attorneys' fees in defending this matter. *See, e.g., Amaker v. Bd. of Probation & Parole,* 525 Pa. 100, 102–04, 576 A.2d 50, 51 (1990); *Smith v. Bd. of Probation and Parole,* 524 Pa. 500, 508–10, 574 A.2d 558, 563 (1990). Additionally, we hold that appellant and his counsel are liable for court costs in generating these current appeals. In deciding to impose joint and several liability, we are guided by our Supreme Court which, in assessing fees against appointed counsel, held that "[a]n argument presented to an appellate court is presumed by the court to be advocated by counsel, and in counsel's judgment to possess merit." *Smith,* 524 Pa. at 508, 574 A.2d at 562.

Although appellees have furnished this Court with information pertaining to the amount of money they have expended in defending against appellant's various suits subsequent to the 1993 settlement, we decline to set a specific figure for remuneration. Although it is our province to award attorney fees, our discretion there ends. It is for the trial court to conduct a hearing and determine the proper amount of appellant's remuneration.

Additionally, we caution both the parties and the trial court that the fees and costs currently being awarded pertain only to the present appeals and not to any of the previous litigation that this case has generated. There came a point at which appellant's zeal to protect his rights metastasized into a feverish and futile attempt to hold some party, any party,

liable for perceived wrongs. It is not our province to determine when this change occurred and to then award fees and costs retroactive to that point in time; neither is it the province of the trial court. Rather, the issue of whether an appeal is frivolous is determined at the time that the appeal is taken or is thereafter waived.[3]

Lastly, we consider appellees' request that this Court permanently enjoin appellant from relitigating the issue of whether the decedent's medical records were concealed. In so doing, we are called to pass upon an issue of first impression in this Commonwealth. While such a remedy is certainly extraordinary and to be reserved for those cases in which the facts unequivocally indicate that it is warranted, our research leads us to conclude that we are empowered to fashion the requested remedy.

As a tribunal of limited jurisdiction, this Court would be without the statutory authority to issue an injunction as part of its original jurisdiction. See 42 Pa.C.S.A. § 741. However, pursuant to § 742 of the Judiciary Code, our legislature has vested this Court with "exclusive appellate jurisdiction of all appeals from final orders of the courts of common pleas." As such, the three consolidated appeals currently as issue, all stemming from final trial court orders, are properly before us for consideration. Therefore, we are faced with a question concerning the Superior Court's remedial, not jurisdictional, powers.

3. We feel it appropriate to stress that our decision to award attorney fees in this matter stems solely from our evaluation of appellant and his counsel's behavior, and not from the familial relationship that exists between them. Contrary to appellees' contention that the parties' status as brothers-in-law is somehow pertinent to our disposition, we readily and emphatically state that the resolution of the instant appeal would be the same regardless of the closeness of affiliation between appellant and his counsel. It is, of course, permissible for an attorney to represent the interests of family members; what is impermissible is for an attorney representing any client to clog the wheels of justice with frivolous appeals generated from the untenable and intractable belief that relief will somehow be forthcoming in the face of copious and abundant caselaw to the contrary. We believe that the tautology of this case abundantly demonstrates that appellant and his counsel have engaged in such behavior.

In defining the scope of the Superior Court's powers, our General Assembly saw fit to grant this Court ample discretion and latitude to define and fashion appropriate remedies. Specifically, § 542 of the Judiciary Code provides:

The Superior Court shall have all powers necessary or appropriate in aid of its jurisdiction which are agreeable to the usages and principles of law.

Although never interpreted in the context of this Court's power to grant a remedial injunction in a civil action, we find instructive and persuasive those lines of cases which have affirmed this Court's broad remedial powers in other contexts. For example, although for reasons of comity and deference we generally decline to reduce the length of a criminal sentence that is within the statutory guidelines, no argument can be made that this Court does not have the power to do so. *See, e.g., Commonwealth v. Johnson,* 446 Pa.Super. 192, 197–99, 666 A.2d 690, 693 (1995). Likewise, at the request of a party, this Court has the discretion to assess attorney fees against a party that has acted in a dilatory or vexatious manner. *See Winpenny, supra.*

Presently, we find that the issuance of an injunction prohibiting appellant from relitigating the issue of whether the decedent's medical records were concealed is necessary and appropriate. In one form or another, this issue has repeatedly been raised by appellant in our trial and appellate courts. The time and resources required from both the parties and the courts has been prohibitive and outlandish.

If there exists a modern antithesis to Dean Roscoe Pound's observation that justice delayed is justice denied, this case may be it since appellant has received more then his share of timely justice. It is now time to dispose of this oft-litigated issue and allow our courts to proceed with legitimate business. We therefore hold that appellant is enjoined from relitigating the issue of whether Bernice Menna's medical records were concealed by any of these parties.[4]

4. We feel it necessary to distinguish our holding from the recent opinion by our Supreme Court in *Harmar Ice Associates v. Lignelli,* 546

The orders of the trial courts are affirmed; case remanded for a determination of attorney fees and court costs.

Pa. 500, 686 A.2d 819 (1996). Therein, our Supreme Court held that it was error for this Court to vacate a judgment of nonsuit and instruct the trial court to issue an injunction against the appellants. The crux of the *Harmar Ice* decision was that, because the case came before the Superior Court from a judgment of nonsuit, a decision on the merits was never entered and, consequently, the injunction order denied appellants their constitutional due process right to be heard. In contrast, our holding today enjoins appellant from re-litigating an issue that has been heard numerous times on its merits; thus, the due process clause is not impinged.