J-S35017-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| EDWARD AARON PIERSON | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ANNA JOY ELTGROTH | : | |
| | : | |
| Appellant | : | No. 618 MDA 2024 |

Appeal from the Order Entered April 3, 2024
In the Court of Common Pleas of Schuylkill County Civil Division at
No(s):  A-88-2024

BEFORE:  PANELLA, P.J.E., MURRAY, J., and KING, J.

MEMORANDUM BY MURRAY, J.:                    **FILED OCTOBER 01, 2024**

Anna Joy Eltgroth (Appellant) appeals from the order granting the petition for a final protection from abuse (PFA) order filed by Edward Aaron Pierson (Pierson or Mr. Pierson), pursuant to 23 Pa.C.S.A. §§ 6101-6122 (PFA Act).  We affirm.

The PFA court summarized the relevant facts of this case:

> The testimony that the court found credible was that … Pierson[] was the husband of the Appellant.  [Pierson] testified that [Appellant] had a violent outburst on the evening of March 11, 2024 [(the March 11 incident)].  [Pierson] testified that [] he was driving [the parties' car (vehicle or automobile)] from Tamaqua to St. Luke's Behavioral Health Center in Lehighton, [with Appellant seated in the front passenger's seat.  Pierson testified Appellant] slammed a glass drinking flask against the dashboard of their automobile and punched the passenger side window several times.  [Pierson] described [Appellant's] behavior during this incident as violent[, and testified] it made him feel unsafe.

Mr. Pierson testified that there were prior incidents of violent meltdowns by [Appellant] that have made him feel unsafe and caused him to retreat into an adjacent room [of the parties' residence].[1] [Pierson] testified to two of those incidents. He testified that in 2021, the Appellant threw a gallon jug of iodine into the shower where [Pierson] was showering. [Pierson] testified that in 2020, the Appellant threw a 12-ounce glass bottle into a bedroom he was occupying. Mr. Pierson also testified that the incidents made him feel quite unsafe. He testified that the incidents interfered with his mental health[;] they interfered with his ability to perform his job[;] and they interfered with his quiet enjoyment of his residence. [Pierson] testified he felt the Appellant could harm him and that makes him feel quite distressed.

The Appellant testified that she was very stressed on March 11[, 2024]. She testified she was at the end of her rope and needed to talk to [a health care professional] immediately.[2] [Appellant] testified that she has [attention deficit hyperactivity disorder] and autism[; Appellant stated those disorders cause her] difficulty with impulse control. [Appellant] testified[, with respect to] the March 11[] incident[, that Pierson had] yelled at her. [Appellant] testified that she hit the water bottle off the [vehicle's] dashboard and her hand against the [passenger] window two times. [Appellant] testified she went to the hospital [after the March 11 incident] because she was afraid of what [might have happened] if the water bottle had broken.

The Appellant also testified to the prior incidents [described] by Mr. Pierson. The Appellant testified that she did throw the iodine jug in the shower [occupied by Pierson], but [alleged] it was a half-gallon jug of iodine, and it was plastic. [Appellant] testified that she threw [the jug] to the opposite side of the shower [from where Pierson was standing]. [Appellant] testified that after the incident in the shower, she fell on the floor and cried because she regretted reacting that way and having her anger react in that way. The Appellant also testified to the incident with

_____

[1] Prior to the March 11 incident, Pierson and Appellant resided together at 158 4th Street, Coaldale, Pennsylvania (the residence). N.T., 4/3/24, at 15.

[2] Pierson was transporting Appellant to a behavioral health walk-in facility, at Appellant's request. *See id.* at 13, 15, 26.

the bottle in the bedroom [occupied by Pierson. Appellant] testified that she did throw the bottle, but [she claimed she threw it far] away from [Pierson].

PFA Court Opinion, 6/17/24, at 3-4 (unpaginated) (footnotes added).

On March 22, 2024, Pierson filed a petition for a temporary PFA order. The PFA court conducted an evidentiary hearing on April 3, 2024 (PFA hearing), wherein Appellant and Pierson were the only witnesses.[3] Following the close of evidence, the PFA court considered argument from the parties. *See* N.T., 4/3/24, at 30-35.

At the conclusion of the PFA hearing, the PFA court explained its findings:

> [T]he testimony that I found credible is that there w[ere] arguments between the [parties] …, and I found [Appellant's] testimony [] credible that [Pierson] was yelling at [Appellant during the March 11 incident,] and this is how [Appellant] reacted. [Appellant] threw a bottle and she punched the dashboard[,] and two [] years [earlier, Appellant] threw a bottle when [the parties] had arguments.

*Id.* at 32. The PFA court announced its ruling as follows:

> The [c]ourt feels there needs to be some protection. I'm going to

_____

[3] Appellant proceeded *pro se* at the PFA hearing. Pierson appeared with counsel.

issue a three-month PFA [order[4]] that [provides Appellant is] not to have any contact with [Pierson,] and [that Appellant is] excluded from th[e] residence.[5]  And the parties should do what they need to stay separated.  You two need to be apart from each other.[6]

***Id.*** at 35 (footnotes added); ***see also*** Final PFA Order, 4/3/24.

Appellant timely filed a counseled notice of appeal.  Both Appellant and the PFA court have complied with Pa.R.A.P. 1925.

Appellant presents a single issue for review:

Whether the trial court erred as a matter of law and abused its discretion in finding [that Pierson] established, by a preponderance of the evidence, that abuse occurred as defined under Pennsylvania's P[FA] … Act, where there was no threatening behavior by Appellant that could have reasonably placed [Pierson] in fear of imminent serious bodily injury?

---

[4] The three-month PFA order expired on July 3, 2024.  Final PFA Order, 4/3/24.  However, this Court has frequently employed an exception to the mootness doctrine to review issues stemming from expired PFA orders.  ***See Snyder v. Snyder***, 629 A.2d 977, 980 n.1 (Pa. Super. 1993) (reviewing an expired six-month PFA order because it fell "into the well-recognized exception to the mootness doctrine of a case which has important public policy considerations and yet may escape review."); ***see also id.*** (observing that PFA orders "are usually temporary, and it is seldom that we have the opportunity to review one before it expires.").

[5] Appellant objected to her exclusion from the residence, pointing out that her personal belongings remained therein.  N.T., 4/3/24, at 36.  The PFA court granted Appellant permission to retrieve her belongings, in the presence of a constable.  ***Id.*** at 36-37.

[6] Both Appellant and Pierson responded in the affirmative to the PFA court's question: "You both agree you're going to move on with your lives [in] separate ways?"  N.T., 4/3/24, at 34.

- 4 -

Appellant's Brief at 7 (capitalization modified).[7]

We are mindful of our standard of review: "In the context of a PFA order, we review the trial court's legal conclusions for an error of law or abuse of discretion." *E.K. v. J.R.A.*, 237 A.3d 509, 519 (Pa. Super. 2020) (citation and quotation marks omitted).

> When a claim is presented on appeal that the evidence is not sufficient to support an order of protection from abuse, we review the evidence in the light most favorable to the petitioner and[,] granting [the petitioner] the benefit of all reasonable inference[s], determine whether the evidence was sufficient to sustain the trial court's conclusion by a preponderance of the evidence.

*Karch v. Karch*, 885 A.2d 535, 536-37 (Pa. Super. 2005) (citation omitted). "A preponderance of the evidence is defined as the greater weight of the evidence, *i.e.*, enough to tip a scale slightly." *E.K.*, 237 A.3d at 519 (citation omitted); *see also id.* ("The PFA Act does not seek to determine criminal culpability. **A petitioner is not required to establish abuse occurred beyond a reasonable doubt**…." (emphasis added)).

> Moreover, when reviewing a PFA court's ruling
>
> on appeal, this Court will defer "to the credibility determinations of the trial court as to witnesses who appeared before it." *Karch* …, 885 A.2d [at] 537…. It is well-settled that "the trier of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence." *Commonwealth v. Walsh*, 36 A.3d 613, 619 (Pa. Super. 2012) (citation omitted). Finally, we review the evidence of record in the light most favorable to, and grant all reasonable

---

[7] Pierson did not file an appellate brief. Following the PFA hearing, Pierson's counsel withdrew from representation, and Pierson filed a praecipe to proceed *pro se*.

inferences to, the party [who] prevailed before the PFA court. ***Snyder v. Snyder***, 629 A.2d 977, 982 (Pa. Super. 1993).

***Kaur v. Singh***, 259 A.3d 505, 509 (Pa. Super. 2021) (citations modified).

In relevant part, the PFA Act defines "abuse" as the "occurrence of one or more of the following acts between family or household members, sexual or intimate partners or persons who share biological parenthood[:] … (2) Placing another in reasonable fear of imminent serious bodily injury." 23 Pa.C.S.A. § 6102(a)(2). Significantly, **an individual need not actually suffer serious bodily injury to prove abuse** under subsection (a)(2). ***See McCance v. McCance***, 908 A.2d 905, 911 (Pa. Super. 2006) (stating that under subsection (a)(2), "actual[] physical injury is not required for the entry of a final [PFA] order[,] but reasonable fear of imminent [serious] bodily injury must be demonstrated." (citation omitted)); ***Fonner v. Fonner***, 731 A.2d 160, 163 (Pa. Super. 1999) ("As the [PFA] Act clearly states, [] the victim of abuse need not suffer actual injury, but rather be in reasonable fear of imminent serious bodily injury." (citation and brackets omitted)). "As the goal of the [PFA] Act is to prevent physical and sexual abuse, **a victim does not have to wait for physical or sexual abuse to occur for the Act to apply**." ***K.B. v. Tinsley***, 208 A.3d 123, 128 (Pa. Super. 2019) (emphasis added); ***see also E.K.***, 237 A.3d at 519 ("The purpose of the PFA Act is to protect victims of domestic violence from those who perpetrate such abuse, with the primary goal of advance prevention of physical and sexual abuse." (citation omitted)).

> "In the context of a PFA case, the court's objective is to determine whether the victim is in reasonable fear of imminent serious bodily injury…." **Raker**[ **v. Raker**], 847 A.2d [720,] 725 [(Pa. Super. 2004)]. Past acts are significant in determining the reasonableness of a PFA petitioner's fear. **K.B.**, 208 A.3d at 128.

**E.K.**, 237 A.3d at 519; **see also Miller ex rel. Walker v. Walker**, 665 A.2d 1252, 1259 (Pa. Super. 1995) ("[I]n light of the purpose of the [PFA] Act to prevent imminent harm to abused person(s), some flexibility must be allowed in the admission of evidence relating to past acts of abuse." (citation and quotation marks omitted)).

Instantly, Appellant claims the evidence presented was insufficient to support a finding that Pierson was placed in reasonable fear of imminent serious bodily injury. **See** Appellant's Brief at 16-17. According to Appellant,

> [t]he evidence only showed that the Appellant … had an angry outburst while being driven by Mr. Pierson to a hospital. There was no threat made against Mr. Pierson. Indeed, in referencing prior incidences that had occurred three to four years [before the March 11 incident], they consisted of the general angry outbursts of [Appellant], without any threat of violence, let alone any physical contact.

**Id.** at 16; **see also id.** at 12 ("[T]he fact is that [Appellant] never was physically violent to Mr. Pierson throughout their relationship."). Appellant maintains that the March 11 incident

> only involved another angry outburst where [Appellant] threw a water bottle in front of her in the vehicle, and struck the window on her side of the vehicle. The evidence was not sufficient to support [the issuance of a final PFA o]rder …, even [when] reviewing the evidence in a light most favorable to Mr. Pierson.

**Id.** at 12.

Appellant further emphasizes that Pierson filed his PFA petition

eleven days after the [March 11 incident]. … [Pierson's] delay in filing in and of itself supports Appellant's argument that [Pierson] was in no way in fear of any serious imminent bodily harm. Mr. Pierson could have filed for protection on the same day (March 11th) as [Appellant's] outburst in the car. [Pierson] elected not to do so.

*Id.* at 17.

In its Pa.R.A.P. 1925(a) opinion, the PFA court deemed the evidence

sufficient to support a finding that Appellant's conduct placed Pierson in

reasonable fear of imminent serious bodily injury under subsection

6102(a)(2). The PFA court reasoned as follows:

We agree with the Appellant, that the Appellant never physically struck [Pierson]. This court found abuse as defined by [subsection] 6102(a)(2), placing another in reasonable fear of imminent serious bodily injury. However, **fear of imminent serious bodily injury does not require any physical injury**. *Fonner* …, 731 A.2d [at 163.] …

**Th[e PFA c]ourt found [Pierson's] testimony credible.** [Pierson] testified that [on March 11, 2024,] he was driving [the] automobile on the highway, when [Appellant, seated] in the [front] passenger seat, slammed a glass drinking flask against the dashboard of the automobile and punched the passenger side window several times. [The PFA court] also found [Pierson's] testimony credible that this was a violent incident and it made him feel unsafe. [Pierson] also testified that he felt the Appellant could harm him and that [] makes him feel quite distressed. [**The PFA court**] **also found that the Appellant's testimony was not credible** and that she tried to downplay the significance of the [March 11] incident in the car and the prior incidents testified to by [Pierson]. **Although [Appellant] tried to down[]play these incidents[, Appellant] <u>also testified that she was not able to control her anger.</u>**

[The PFA c]ourt found that the testimony of the Appellant established that the Appellant's violent outburst in the

- 8 -

[automobile, wherein Appellant] violently slam[med] a glass drinking flask against the dashboard of the automobile while [Pierson] was driving the automobile[,] and then punching the side window several times[,] made [Pierson] feel unsafe. [The PFA court] also found that this conduct established that [Pierson] was placed in reasonable fear of serious bodily injury[,] and that [Pierson] could [have been] seriously injured while driving the [automobile, during which time] Appellant was having these violent outbursts.

PFA Court Opinion, 6/17/24, at 4-5 (unpaginated) (emphasis added).

Our review discloses the PFA court's foregoing reasoning is supported by the record. *See id.* Viewing the evidence in the light most favorable to Pierson, we conclude there was sufficient evidence from which the PFA court could find, by a preponderance of the evidence, that Appellant engaged in a course of conduct that placed Pierson "in reasonable fear of imminent serious bodily injury." 23 Pa.C.S.A. § 6102(a)(2).

Our decision in *Raker*, *supra*, is analogous. There, the PFA petitioner (wife) sought a final PFA order, claiming the conduct of her husband (husband) placed wife in reasonable fear of imminent serious bodily injury. *Raker*, 847 A.2d at 723. At the evidentiary hearing, wife testified that (a) the parties were in the process of a divorce and, due to wife's financial limitations, she was forced to move into one side of a duplex property owned by the parties, with husband residing in the other side of the duplex; (b) on November 16, 2002, husband entered wife's residence, without her permission, at 2:00 a.m. and encountered wife and her son-in-law in wife's kitchen; (c) wife's son-in-law and husband engaged in a physical scuffle, during which a knife fell from

- 9 -

husband's clothing onto the floor. *Id.* Wife further testified to several prior "incidents that had taken place between her and [husband,] during which [wife] was threatened or intimidated." *Id.*; *see also id.* at 722-23 (detailing the prior incidents). Husband testified at the hearing on wife's PFA petition that, at the time of his entry in wife's residence (after knocking on the door), he was unaware that wife had moved into the property. *Id.* at 723; *see also id.* (Husband denying he had a knife on his person when he entered wife's residence).

The PFA court in *Raker* found the evidence established husband's conduct placed wife in reasonable fear of imminent serious bodily injury, and entered a final PFA order pursuant to subsection 6102(a)(2).[8] *Id.* at 724; *see also* 23 Pa.C.S.A. § 6102(a)(2). The PFA court found:

> [T]here is clearly a volatile history between the parties and this court was convinced that there were significant threats in the past, which, when considered in conjunction with the with the November 16, 2002[,] events, would justify [wife] fearing injury at the hands of [husband].

*Raker*, 847 A.2d at 724 (citation omitted); *see also id.* (PFA court stating it "believed that anyone would be in reasonable fear of serious bodily injury upon finding an unexpected guest in the[ir] home at 2:00 a.m." (citation and quotation marks omitted)).

---

[8] The PFA order evicted and excluded husband from the duplex property entirely, and prohibited any contact between the parties. *Raker*, 847 A.2d at 724.

Husband appealed, claiming the evidence was insufficient to support a finding that his conduct placed wife in reasonable fear of imminent serious bodily injury. *Id.* This Court affirmed, stating that

> throughout [husband's] brief[,] he relates the facts in a manner that denigrates the seriousness of his actions. He fails to recognize that [wife's] testimony regarding her fear of [husband] was believed by the [PFA] court and[,] in conjunction with [wife's] testimony about [husband's] actions previously and on the night of the precipitating events[,] is sufficient to support the [PFA] court's determination that [wife] was in fear of imminent serious bodily injury. *See Williamson v. Williamson*, … 586 A.2d 967, 972 (Pa. Super. 1991) (providing that "[the] finder of fact is entitled to weigh evidence and assess credibility" and "believe all, part or none of the evidence presented").

*Raker*, 847 A.2d at 726; *see also id.* at 725 ("In the context of a PFA case, the court's objective is to determine whether the victim is in reasonable fear of imminent serious bodily injury, which is exactly the conclusion arrived at by the [PFA] court here.").

Instantly, like the situation in *Raker*, Appellant "fails to recognize that [Pierson's] testimony regarding h[is] fear of [Appellant] was believed" by the PFA court. *Id.* at 726; *see also* PFA Court Opinion, 6/17/24, at 4-5. Here, as in *Raker*,

> there is clearly a volatile history between the parties and … there were … [incidents of Appellant's abuse] in the past, which, when considered in conjunction with the … [March 11 incident], would justify [Pierson] fearing injury at the hands of [Appellant].

*Raker*, 847 A.2d at 724.

Finally, contrary to Appellant's claim, it is irrelevant that Appellant never physically abused Pierson. *See K.B.*, 208 A.3d at 128 ("[A] victim does not

- 11 -

have to wait for physical … abuse to occur for the [PFA] Act to apply."); ***Fonner***, 731 A.2d at 163 ("[T]he victim of abuse need not suffer actual injury"). Further, the fact that Pierson did not file his PFA petition for 11 days after the March 11 incident is not sufficient to disturb the PFA court's factual findings.[9]

Based on the foregoing, Appellant's challenge to the sufficiency of the evidence supporting the PFA court's order does not entitle her to relief.

Order affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/01/2024

---

[9] Appellant testified at the PFA hearing that after the March 11 incident, she was admitted for treatment at the hospital. N.T., 4/3/24, at 15 (Appellant stating, "I proceeded to the Walk-in Center on [March] 11th and the emergency room, and then by the 12th is when I was admitted to the hospital in Lehighton."). The record does not reflect Appellant's discharge date from the hospital.