J-A13029-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| K.G. | | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | | |
| v. | | |
| E.D. | | |
| Appellee | | No. 2982 EDA 2013 |

Appeal from the Order entered September 27, 2013
In the Court of Common Pleas of Montgomery County
Civil Division at No(s): 2011-05320

| | | |
|---|---|---|
| K.G. | | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | | |
| v. | | |
| E.D. | | |
| Appellant | | No. 3128 EDA 2013 |

Appeal from the Order entered September 27, 2013
In the Court of Common Pleas of Montgomery County
Civil Division at No(s): 2011-05320

BEFORE: ALLEN, J., MUNDY, J., and FITZGERALD, J.[*]

MEMORANDUM BY MUNDY, J.:                    **FILED DECEMBER 30, 2014**

Cross-Appellants, K.G. (Mother) and E.D. (Father), both appeal from

the September 27, 2013 order granting them shared legal and physical

---

[*] Former Justice specially assigned to the Superior Court.

custody of their daughter, G.D. After thorough review, we reverse and remand for further proceedings.[1]

We summarize the relevant factual and procedural history of this case as follows. In September 2009, Mother and Father met on the dating website Match.com. Trial Court Opinion, 11/27/13, at 4. At the time the parties met, Father's marital status was listed as divorced in his site profile. *Id.* at 4, 8-9. Despite this listing, Father was in fact married to M.D. (Wife). *Id.* at 4-5, 9. Mother and Father began dating in September 2009. *Id.* at 9. In the spring of 2010, Mother became pregnant with G.D., who was subsequently born in December of 2010. *Id.* at 5, 9. Father's name was not listed on G.D.'s birth certificate. *Id.* at 5-6.

In late-January 2011, Mother signed adoption paperwork prepared by Father's attorney. *Id.* at 6, 8, 10. In doing so, Mother executed her consent to the adoption of G.D. by Father and Wife. *Id.* at 8, 10-11. Father subsequently obtained physical custody of G.D. from Mother on February 27, 2011. *Id.* at 7, 11.

On March 2, 2011, Father and Wife filed a petition to confirm Mother's consent to G.D.'s adoption and a petition for Wife's adoption of G.D. On

---

[1] By unpublished memorandum, on August 15, 2014, this Court remanded this matter and retained jurisdiction for the trial court to file a supplemental opinion, addressing its factual determinations underlying its entire custody finding. *See K.G. v. E.D.*, --- A.3d --- (Pa. Super. 2014) (unpublished memorandum). The trial court filed its supplemental opinion with this Court on September 26, 2014.

- 2 -

March 7, 2011, Mother filed a *pro se* petition to revoke her consent to G.D.'s adoption. Mother alleged she executed this consent due to the fraud and/or duress of Father. ***See*** Trial Court Opinion, 11/27/13, at 2; Mother's Complaint for Emergency Custody, 3/7/11, at ¶ 7. Also on March 7, 2011, Mother filed a *pro se* emergency custody petition. Within this filing, Mother alleged G.D. was living in Maryland with Father and Wife, and that Father was denying Mother contact with G.D. Mother's Complaint for Emergency Custody, 3/7/11, at ¶ 7. Father subsequently filed a motion to stay the custody action pending the outcome of the adoption action, which the trial court granted on March 25, 2011.

On May 27, 2011, the trial court issued an agreed-upon temporary custody order. This temporary order granted Father primary physical custody of G.D. and Mother partial physical custody of G.D. on alternating weekends. Trial Court Opinion, 11/27/13, at 2; Temporary Order, 5/26/11, at 2-5. This order was to remain in effect until the conclusion of the orphans' court action. Temporary Order, 5/26/11, at 4-5.

Following a four-day hearing, the orphans' court granted Mother's petition to revoke her consent to G.D.'s adoption on or around October 12, 2011. The orphans' court concluded the consent had been procured by fraud and duress. ***See*** Trial Court Opinion, 11/27/13, at 2. The orphans' court dismissed, with prejudice, Father and Wife's petition to confirm consent and petition for adoption. ***Id.*** at 2-3. By a separate order, the

- 3 -

orphans' court directed the May 27, 2011 temporary custody order to remain in full force and effect pending further order of court. Trial Court Order, 10/13/11.

Father and Wife appealed the orphans' court order to this Court. **See In re Adoption of G.D.**, 50 A.3d 245 (Pa. Super. 2012) (unpublished memorandum), *appeal denied*, 53 A.3d 51 (Pa. 2012). Due to the pending appeal, the trial court stayed all further custody proceedings by order dated December 14, 2011. The trial court directed that the May 27, 2011 temporary custody order would remain in full force and effect during the pendency of Father and Wife's appeal.

While awaiting our disposition of that appeal, Father filed two emergency petitions seeking an order enjoining Mother from disclosing the details of the custody and orphans' court litigations. Father's Emergency Petition to Enjoin, 1/24/12; Father's Emergency Petition to Enjoin, 2/16/12. Mother also filed an emergency petition to correct and/or clarify the order of court and for appointment of Guardian Ad Litem (GAL). Mother requested that the temporary order be corrected to grant her shared legal custody. Mother's Emergency Petition, 4/25/12, at 4.[2]

By memorandum filed on May 18, 2012, this Court affirmed the October 12, 2011 orphans' court order. **See G.D.**, **supra**. On June 12,

---

[2] We note that Mother's petition does not contain pagination. Therefore, we have assigned each page a sequential page number for ease of reference.

2012, Mother filed a petition to lift the stay in the custody action and for an immediate hearing. However, Father and Wife filed a petition for allowance of appeal with our Supreme Court on June 18, 2012. *Id.* Our Supreme Court denied that petition on July 17, 2012. *Id.*

Following a conference on Mother's emergency petition to correct and/or clarify the custody order, the trial court granted Mother and Father shared legal custody on July 31, 2012. Trial Court Order, 7/31/12, at ¶ 1. The trial court subsequently listed this matter for trial. Trial Court Order, 8/2/12 at 1. The trial commenced on March 25, 2013, and continued through March 26, April 25-26, June 3-5 and 10-11, August 5, 7, 9, and 12-14, 2013. At trial, Mother and Father's testimony differed significantly. *See* Trial Court Opinion, 11/27/13, at 4-11.

Following this protracted custody proceeding, the trial court granted Mother and Father shared legal and physical custody on an alternating weekly basis. Trial Court Order, 9/27/13, at 8. The trial court directed Mother and Father to attend co-parenting counseling "until such time as the counselor deems it no longer necessary, or, until further order of the Court." *Id.* at 10. By this order, the trial court also denied Father's petitions to enjoin Mother from disclosing the details of the orphans' court litigation and the custody matter on the Internet, to the media, or to any other third party. *Id.* at 11.

On October 24, 2013, Mother filed a timely notice of appeal. Mother failed to file a concise statement of errors complained of on appeal with this notice. *See* Pa.R.A.P. 1925(a)(2)(i) (providing that a concise statement of matters complained of on appeal shall accompany a notice of appeal in a children's fast track case). On October 29, 2013, the trial court directed Mother to file her concise statement within twenty-one days; Mother timely complied with that order. Because no party claims prejudice resulted from Mother's failure to file a concise statement with her notice of appeal and because Mother timely complied with the trial court's order, we will not quash or dismiss her appeal. *See In re K.T.E.L.*, 983 A.2d 745, 747 (Pa. Super. 2009) (holding that an appellant's failure to strictly comply with Pa.R.A.P. 1925(a)(2)(i) did not warrant an application of the waiver rule, as no court order had been violated, and there was no prejudice to any party).

On November 7, 2013, Father filed a timely notice of cross-appeal and a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i). *See* Pa.R.A.P. 511 (stating, "[t]he timely filing of an appeal shall extend the time for any other party to cross appeal"); Pa.R.A.P. 903 (providing, "if a timely notice of appeal is filed by a party, any other party may file a notice of appeal within 14 days of the date on which the first notice of appeal was served[ ]"). The trial court subsequently filed its Rule 1925(a) opinion on November 27, 2013. Following remand by this Court,

the trial court filed its supplemental opinion on September 26, 2014. *See*

***K.G. v. E.D.***, --- A.3d --- (Pa. Super. 2014) (unpublished memorandum).

On appeal, Mother raises the following issue for our review.

> [I.] Should the child custody order appealed from be reversed where the statutory factors in 23 Pa.C.S.[A.] § 5328[(a)] do not support the custody determination, and the trial court's findings of fact and conclusions of law are unsupported by the record?

Mother's Brief at 3. Additionally, Father raises the following three issues for

our review.

> I. Should the [c]hild custody order appealed from be reversed where the statutory factors in 23 Pa.C.S.[A.] § 5328[(a)] do not support the custody determination by the [t]rial [c]ourt, and the [t]rial [c]ourt's findings of fact and conclusions of law are unsupported by the record[?]
>
> II. Should the [c]hild custody order appealed from be reversed when the [t]rial [c]ourt committed prejudicial error in excluding evidence offered by [Father] concerning Mother's son and how Mother raised and cared for her son[?]
>
> III. Should the [c]hild custody order appealed from be reversed when the [t]rial [c]ourt abused its discretion in failing to enjoin Mother from disclosing the details of the [a]doption and [c]ustody matters on the [I]nternet, to the media or to any person or entity not associated with the [c]ustody or [a]doption matters[?]

Father's Brief at 1.

The scope and standard of our review in custody matters is as follows.

- 7 -

> [T]he appellate court is not bound by the deductions or inferences made by the trial court from its findings of fact, nor must the reviewing court accept a finding that has no competent evidence to support it. … However, this broad scope of review does not vest in the reviewing court the duty or the privilege of making its own independent determination. … Thus, an appellate court is empowered to determine whether the trial court's incontrovertible factual findings support its factual conclusions, but it may not interfere with those conclusions unless they are unreasonable in view of the trial court's factual findings; and thus, represent a gross abuse of discretion.

*R.M.G., Jr. v. F.M.G.*, 986 A.2d 1234, 1237 (Pa. Super. 2009) (quoting *Bovard v. Baker*, 775 A.2d 835, 838 (Pa. Super. 2001)). Moreover,

> [O]n issues of credibility and weight of the evidence, we defer to the findings of the trial [court] who has had the opportunity to observe the proceedings and demeanor of the witnesses.
>
> The parties cannot dictate the amount of weight the trial court places on evidence. Rather, the paramount concern of the trial court is the best interest of the child. Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion.

*R.M.G., Jr., supra* at 1237 (internal citations omitted). The test is whether the evidence of record supports the trial court's conclusions. *Ketterer v. Seifert*, 902 A.2d 533, 539 (Pa. Super. 2006).

*A.V. v. S.T.*, 87 A.3d 818, 820 (Pa. Super. 2014) (parallel citations omitted).

- 8 -

The primary concern in any custody case is the best interests of the child. "The best-interests standard, decided on a case-by-case basis, considers all factors that legitimately have an effect upon the child's physical, intellectual, moral, and spiritual wellbeing." *Saintz v. Rinker*, 902 A.2d 509, 512 (Pa. Super. 2006), *citing* *Arnold v. Arnold*, 847 A.2d 674, 677 (Pa. Super. 2004).

Instantly, because the custody trial commenced in March 2013, the Child Custody Act (Act), 23 Pa.C.S. §§ 5321–5340, is applicable. *See C.R.F. v. S.E.F.*, 45 A.3d 441, 445 (Pa. Super. 2012) (holding that, if the custody evidentiary proceeding commences on or after the effective date of the Act, *i.e.*, January 24, 2011, the provisions of the Act apply). Section 5328 of the Act provides an enumerated list of factors a trial court must consider in determining the best interests of a child when awarding any form of custody.

### § 5328. Factors to consider when awarding custody

**(a) Factors.**—In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's

household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(3)     The parental duties performed by each party on behalf of the child.

(4)     The need for stability and continuity in the child's education, family life and community life.

(5)     The availability of extended family.

(6)     The child's sibling relationships.

(7)     The well-reasoned preference of the child, based on the child's maturity and judgment.

(8)     The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9)     Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10)    Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11)    The proximity of the residences of the parties.

(12)    Each party's availability to care for the child or ability to make appropriate child-care arrangements.

> (13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.
>
> (14) The history of drug or alcohol abuse of a party or member of a party's household.
>
> (15) The mental and physical condition of a party or member of a party's household.
>
> (16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a)(1)-(16).[3]

This Court has stated that, "**[a]ll** of the factors listed in section 5328(a) are required to be considered by the trial court when entering a custody order." **J.R.M. v. J.E.A.**, 33 A.3d 647, 652 (Pa. Super. 2011) (emphasis in original).

> [In addition,] Section 5323(d) provides that a trial court "shall delineate the reasons for its decision on the record in open court or in a written opinion or order." 23 Pa.C.S.A. § 5323(d). Additionally, "section 5323(d) requires the trial court to set forth its mandatory assessment of the sixteen [Section 5328 custody] factors prior to the deadline by which a litigant must file a notice of appeal." **C.B. v. J.B.**, 65 A.3d 946, 955 (Pa. Super. 2013), *appeal denied*, 70 A.3d 808 (Pa. 2013).

---

[3] The Act was amended, effective January 1, 2014, to include an additional factor at 23 Pa.C.S.A. § 5328(a)(2.1) (providing for consideration of child abuse and involvement with child protective services).

***A.V.***, ***supra*** at 822-823. With these standards in mind, we turn to the merits of this appeal.

Mother argues that the trial court abused its discretion by not granting her sole legal and primary physical custody of G.D. Mother's Brief at 51. The crux of her argument is that the trial court failed to properly consider and apply the evidence involving Father's act of fraudulently procuring the adoption consent in fashioning its custody order. Father similarly argues that the trial court erred and abused its discretion by not granting him sole legal and primary physical custody of G.D. Father's Brief at 48-49, 54. Both parties contend that the trial court's conclusions of law lack support within its factual findings and that the trial court did not properly apply the Section 5328(a) factors. Mother's Brief at 51; Father's Brief at 54. Specifically, Mother contests the trial court's conclusions as to Section 5328(a)(1), (2), (8), (11), and (13), while Father contests the conclusions as to Section 5328(a)(1), (2), (3), (4), (8), (10), (11), and (13). Mother's Brief at 52-59; Father's Brief at 54-63.

Upon agreement of the parties, the trial court admitted into evidence the orphans' court order granting Mother's petition to revoke her consent to G.D.'s adoption, this Court's memorandum affirming the order, and our Supreme Court's denial of Father's petition for allowance of appeal. N.T., 3/25/13, at 8-9, 11. In addition to this documentary evidence, Mother and Father testified with respect to the procurement of the adoption consent and

the way Father came to exercise sole physical custody of G.D. from February 27, 2011 until the May 27, 2011 temporary order, and sole legal custody until the July 31, 2012 temporary order. The trial court aptly set forth Mother's and Father's testimony, which differed significantly, in its November 27, 2013 Rule 1925(a) opinion, and we adopt it herein. *See* Trial Court Opinion, 11/27/13, at 4-11. Notably, Father testified he does not agree with the orphans' court finding that he fraudulently procured the adoption consent. He stated, "I don't agree with it, but I am abiding by it." N.T., 6/5/13, at 176.

With respect to Mother's argument that the trial court failed to properly consider and apply the evidence involving Father's act of fraudulently procuring the adoption consent in fashioning its custody order, the trial court responded that it considered the above-described documentary evidence, but failed to find the evidence relevant to its best interest analysis pursuant to Section 5328(a). Trial Court Opinion, 11/27/13, at 16-18; Trial Court Opinion, 9/26/14, at 2-3. The trial court reasoned that it "is not in a position to 'redress' any purported wrongs which [the orphans' court] found had occurred in the procurement of the adoption consent." Trial Court Opinion, 11/27/13, at 18. Rather, the trial court explained that it "strictly limited" its determination "to a custodial arrangement which would be in the best interest of the child … ." *Id.*; Trial

Court Opinion, 9/26/14, at 3. Upon thorough review, we are constrained to conclude that the trial court abused its discretion.

In addressing Section 5328(a)(10), which states the trial court must consider "[w]hich party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child[,]" the trial court found that Mother's "limited involvement in the child's life is [not] indicative in any way that she is less likely to attend" to G.D.'s needs. Trial Court Opinion, 9/26/14, at 13. Significantly, the trial court based this finding on "the circumstances of how [ ] Father came to be in the position of being the primary caretaker, specifically, based on a consent to adopt which was later found to be fraudulently obtained by [ ] Father." *Id.* Further, the trial court rejected as not credible all of Father's testimony alleging that Mother is incapable of providing for G.D.'s daily needs. *Id.* at 13-14.

Nevertheless, the trial court failed to apply the evidence of Father's fraudulent procurement of the adoption consent to its analysis of Section 5328(a)(1), which looks at which party is more likely to encourage and permit frequent and continuing contact between the child and another party. Further, the trial court failed to properly apply the evidence that Father exercised sole physical custody from February 27, 2011, to May 27, 2011, without Mother's consent.

In its September 26, 2014 supplemental opinion, the trial court acknowledged that Father "unilaterally limit[ed]" Mother's contact with G.D.

- 14 -

from February 27, 2011, until the May 27, 2011 temporary physical custody order. Trial Court Opinion, 9/26/14, at 5. However, the trial court excused Father's action because the orphans' court "had not yet rendered a decision on the accompanying adoption matter at that time, and based on the Consent to Adopt signed by both parents, [ ] Father had full legal and physical custody of the child until the May 2[7], 2011 agreed order was issued." *Id.* at 6. Therefore, the trial court found Father's action of limiting Mother's contact with G.D. was "not indicative that [he] is incapable of permitting and encouraging frequent contact between the child and [ ] Mother to a degree which would permit the court to deny him shared physical custody of the child." *Id.* The trial court determined that both parties have demonstrated they are able to permit and encourage frequent and continuing contact. Order, 9/27/13, at 3.

We conclude the trial court abused its discretion in excusing Father's behavior in unilaterally limiting Mother's contact with G.D. in light of the competent record evidence that Father fraudulently procured the adoption consent that resulted in the orphans' court litigation. As such, we hold as unreasonable the trial court's conclusion that Father is able to permit and encourage frequent and continuing contact between G.D. and Mother.

Additionally, we conclude the trial court abused its discretion to the extent it based its conclusion under Section 5328(a)(1) on Mother having consistently exercised partial custody on alternating weekends pursuant to

- 15 -

the May 27, 2011 temporary order. The competent record evidence reveals that the May 27, 2011 temporary physical custody order, as well as the July 31, 2012 temporary legal custody order, resulted from the trial court's intervention, at Mother's request, for her custody rights. Moreover, although Mother exercised her partial physical custody consistently since the temporary order was entered, conflict and chaos has dominated the parties' dealings, including at the time of custody exchanges. Mother aptly summarized the extensive testimonial evidence in this regard as follows.

> Father and [Wife] did everything in their power to ensure that Mother received only the bare minimum amount of visitation directed by the court, including obstructing the [custody] exchanges with frivolous requests, withholding medical information, failing to provide clothing for the child, … refusing additional visitation even when they were too ill or occupied to care for G.D. and were frequently using daycare, videotaping and shouting [during] the [custody] exchanges ….
>
> …
>
> Father admitted to hiring private investigators to follow Mother, [her boyfriend], and other people Mother knows. He acknowledged that he allowed his sister … to use information he provided to attack Mother on the [I]nternet ….
>
> …
>
> Father testified that he does not consult Mother on G.D.'s school, church, activities, or relocation, and that they fight and do not get along when it comes to G.D., although he claims that he wants to co-parent with Mother. Mother confirm[ed] Father's lack of communication on these issues. Father and [Wife] claimed that Mother consented to [their]

> relocation to Delaware, but disregarded their move to Maryland in early 2011, claiming simply that Mother knew they had a house there. Father and [Wife] accuse Mother of bad parenting, and claim that she does not show any interest in G.D. [Wife] … called Mother a prostitute, accused her of having STD's, accused her of engaging in drugs, lesbian sex, and threesomes, and claimed that she had sex with old men and men at the massage parlor,[4] making these accusations at least once in front of [Mother's boyfriend] and the children,[5] as well as on the Internet.

Mother's Brief at 24, 33, 38 (internal citations omitted).

Our review of the testimonial evidence confirms the above summary and reveals Father and Wife's animosity toward Mother throughout the underlying custody proceedings and trial. The relationship between the parties is so acrimonious that, in the July 31, 2012 temporary order granting Mother shared legal custody, the trial court directed that neither Mother, Father, nor Wife "were to participate in the exchange of the custody of the child. Third party designees were to exchange the child inside the police

_____

[4] Mother testified that, in approximately 2009, she worked at a massage parlor that required her to conduct topless massages. Mother quit the job but subsequently returned to it because she needed work. She last worked at the massage parlor in January of 2010, nearly one year before G.D.'s birth, and she has not returned. **See** Mother's brief, at 10; **see also** N.T., 3/25/13, at 24-27; N.T., 6/4/13, at 8. Mother testified that, for the last three years, she has been employed at a motel as an accounting manager. N.T., 3/25/13, at 27.

[5] In addition to G.D., Mother has one son from a prior relationship, who was age seven at the time the custody trial commenced. Mother has sole custody of her son.

stations in Whitemarsh Township, [in Montgomery County, Pennsylvania] and Odessa, Delaware." Trial Court Opinion, 11/27/13, at 3. The trial court ordered that Mother, Father, and Wife "shall remain in their vehicles at all times during the exchange of custody." Trial Court Order, 7/31/12 at 1. Further, the trial court ordered that there "shall be no videotaping of the exchange of custody of the Child inside either police station." *Id.* at 1. Mother testified that, prior to the July 31, 2012 temporary order, Father and Wife videotaped the custody exchanges. Specifically, Mother testified as follows.

> Q. Now, you received an Order, July 3[1], 2012, that indicated there would be no videotaping at the exchanges. Has videotaping continued?
>
> A. It has, but they're in their car videotaping. [The order] says that there's no videotaping … in the police station[.] So, the way around it is to videotape from the car. So they would videotape – I could see the videotape camera in their car, videotaping the exchanges. Through the window.

N.T., 3/25/13, at 251.

Moreover, Father continues to deny that he fraudulently procured the adoption consent from Mother, and that he unilaterally limited Mother's contact with G.D. Even a review of Father's brief to this Court demonstrates the contention and hostility that exist, with Father arguing that Mother is the one who is incapable of permitting frequent and continuing contact between G.D. and him, and that he should be awarded primary physical custody, although the record is devoid of any evidence favoring him in this regard.

Father's Brief at 54-56. Based on the foregoing, we hold the trial court's findings with respect to Section 5328(a)(1) are not supported by the competent record evidence, and its conclusions are unreasonable.

With respect to Section 5328(a)(8), which looks at the attempts of a parent to turn the child against the other parent, the trial court found "no credible evidence that either parent has attempted to turn the child against the other parent." Order, 9/27/13, at 4. To the contrary, Mother argues the following.

> Father and [Wife] may not be engaged in overt, active attempts to turn G.D. against Mother, but they are engaged in a far more sinister and subtle method of doing so; isolation. They are acting to keep G.D. from Mother, so that she forgets Mother, comes to view her as a stranger, and on her own becomes less comfortable with Mother. But for the court order in place to thwart them[,] it is certain [Father and Wife] would be far more aggressive in their efforts to keep Mother from G.D.

Mother's Brief at 57.

On February 27, 2011, when Father first started to limit Mother's contact with G.D., G.D. was an infant of two months. Mother testified that, after she filed the petition to revoke the adoption consent, but before the hearing in that matter, the orphans' court and counsel for the parties agreed Mother should have visitation with G.D. N.T., 3/25/13, at 131. Mother testified that Father would only agree to visits between Mother and G.D. if he supervised them, and two such visits occurred in May of 2011. *Id.* at 131-132. During the second supervised visit, while Mother was holding G.D.

on her lap, Mother testified that Father stated to her, "I would like to work something out …. Let my wife adopt your baby." *Id.* at 137. Mother testified that when she refused, Father became angry, and tried to pry G.D. from her arms. *Id.* at 138. She went on to testify that Father was holding her down on the chair and that he was in her face yelling and threatening to "blackmail" her about her past employment. *Id.* at 138. The altercation became so heated that Wife came into the room and removed G.D. from the middle of the situation. *Id.* at 139. Father then physically pushed Mother out the door of the house while continuing to scream after her. *Id.*

As a result of this incident, Mother filed a Protection From Abuse (PFA) petition on May 16, 2011, and the trial court issued a temporary PFA order granting her full custody of G.D. Mother testified Father was never served with that order, and, therefore, she did not obtain temporary custody of G.D. *Id.* at 137-139. The PFA hearing occurred on May 26, 2011, and Mother agreed to settle the PFA dispute with Father by accepting unsupervised partial physical custody of G.D. on alternating weekends. *Id.* at 157. Thus, the agreed upon May 27, 2011 temporary physical custody order was issued under these circumstances.

As such, from the time G.D. was five months old through the custody trial, at which time G.D. was two years old, G.D. has been in Mother's physical custody only on alternating weekends, while Father and Wife have been her primary caretakers. Despite Mother's requests for additional

custody time on holidays and at other specific times, Father has never agreed to any time beyond what was granted to Mother in the May 27, 2011 temporary order. N.T., 3/25/13, at 171-172, 176-178. We conclude that, for the first two years of G.D.'s life, Father succeeded in deliberately isolating G.D. from Mother. This inevitably caused any bond and relationship, which this small child is entitled to have with her Mother, to suffer. This naturally manifested in G.D. favoring Father as the more familiar parent. Therefore, we are constrained to conclude that the competent record evidence does not support the trial court's finding under Section 5328(a)(8) that neither parent has attempted to turn the child against the other parent.

With respect to Section 5328(a)(11), the proximity of the residences of the parties, there is no dispute that the parties live a driving distance of approximately one and a half hours.[6] The trial court acknowledged that the parties do not live in close proximity to each other and that this may present an obstacle, but concluded that this factor does not outweigh "the benefits of the importance of a shared physical custody for the child's best interests." Trial Court Opinion, 9/26/14, at 16. We hold the trial court's conclusion unreasonable because it requires G.D., then age two, to undergo a three-hour roundtrip car ride each week between homes.

_____

[6] Mother resides in Plymouth Meeting, in Montgomery County, and Father resides in the State of Maryland.

Based on the foregoing, we conclude the trial court abused its discretion in failing to weigh Section 5328(a)(1), (8), and (11) in Mother's favor. Moreover, to the extent the trial court based its custody decision upon the presumption that a shared physical custody arrangement is in G.D.'s best interest, we conclude that it committed an error of law.

> [C]ourts may no longer reason by presumption in child custody cases. Not only has the tender years presumption been explicitly repudiated, but so have all other presumptions. In a custody dispute between parents, no one has the burden of proof; no presumption may be resorted to; instead, the court must determine according to the evidence in the particular case before it what will serve the children's best interests.

*In re Custody of Temos*, 450 A.2d 111, 121-122 (Pa. Super. 1982) (citations omitted).

Upon thorough review, we conclude the competent evidence of record does not support a shared physical custody award. Accordingly, we reverse the order with regard to the award of shared physical custody, and direct that Mother shall have primary physical custody of G.D. *See M.A.T. v. G.S.T.*, 989 A.2d 11, 21 (Pa. Super. 2010) (*en banc*) (stating that, where the record is sufficiently developed, we may substitute our judgment for that of the trial court and decide the case on the merits).

Based on the foregoing, we likewise conclude that the trial court abused its discretion in granting the parties shared legal custody. The Act defines "legal custody" as "[t]he right to make major decisions on behalf of

- 22 -

the child, including, but not limited to, medical, religious and educational decisions." 23 Pa.C.S.A. § 5322. Section 5328(a)(13) addresses the level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. In this case, the trial court found "there is a level of conflict between the parties." Trial Court Order, 9/27/13, at 6. Specifically, the trial court stated as follows.

> [The trial court] has concerns as to the level and quality of communication between Mother and Father, however, the [trial c]ourt does not find these concerns significant enough to bar a shared custody arrangement as both parties have demonstrated a willingness and ability to communicate in promoting the child's best interests ….

*Id.* at 7.

Upon review, we conclude that the competent evidence of record does not support the trial court's finding that the legitimate concerns about the level and quality of the parties' communication are not significant enough to bar a shared custody arrangement. In the trial court's September 26, 2014 supplemental opinion, it reasoned, in part, "with the assistance of co-parent counseling, both parents should be able to learn to communicate more effectively for the best interests of the child." Trial Court Opinion, 9/26/14, at 18. We disagree based on the record evidence. Indeed, Mother testified that she and Father "do not communicate at all." N.T., 3/25/13, at 218. Rather, Mother testified she believes it is Wife who corresponds with her in e-mails regarding G.D. *Id.*

- 23 -

We conclude it is in G.D.'s best interest to grant Mother sole legal custody until such time that the situation between the parties were to improve. Accordingly, we reverse the order with regard to the award of shared legal custody, and direct that Mother shall have sole legal custody of G.D. **See M.A.T.**, **supra**.

Mother also requests this Court to award her counsel fees and costs associated with the instant appeal, such as this Court awarded her in connection with Father's appeal from the orphans' court order. **See Adoption of G.D.**, **supra**. In support of her request, Mother sets forth the following argument.

> Father and [Wife] engaged in the same misconduct here – indeed, they even continue to give the same statements and testimony already adjudicated as perjury in the Orphans' Court case – as they did in the prior proceeding. This Court has already determined that Father's prior misconduct warranted an award of fees. His persistent engagement in that same misconduct in this case warrants the same result. They had 12 witnesses (Mother had 6) and managed to drag out this custody case for over 14 days, as the record will reflect, as well as filed numerous petitions.

Mother's Brief at 60-61.

Pennsylvania Rule of Appellate Procedure 2744 provides as follows.

> **Rule 2744. Further Costs. Counsel Fees. Damages for Delay**
>
> In addition to other costs allowable by general rule or Act of Assembly, an appellate court may award as further costs damages as may be just, including

- 24 -

> (1) a reasonable counsel fee and
>
> (2) damages for delay at the rate of 6% per annum in addition to legal interest,
>
> if it determines that an appeal is frivolous or taken solely for delay or that the conduct of the participant against whom costs are to be imposed is dilatory, obdurate or vexatious.  The appellate court may remand the case to the trial court to determine the amount of damages authorized by this rule.
>
> …

Pa.R.A.P. 2744.

Further, this Court has explained our standard of review.

> In determining the propriety of such an award, we are ever guided by the principle that an appeal is not frivolous simply because it lacks merit.  Rather, it must be found that the appeal has no basis in law or fact.  This high standard is imposed in order to avoid discouraging litigants from bringing appeals for fear of being wrongfully sanctioned.

**Griffith v. Kirsch**, 886 A.2d 249, 255-256 (Pa. Super. 2005), *quoting*

**Menna v. St. Agnes Med. Ctr.**, 690 A.2d 299, 304 (Pa. Super. 1997)

(citations omitted).

In this appeal, we discern no basis to award Mother reasonable attorney fees and costs where Mother filed an appeal from the custody order, and Father filed a cross-appeal.  Father's cross-appeal is not frivolous or taken solely for delay.  Although a panel of this Court deemed Father's conduct in the orphans' court litigation to be "dilatory, obdurate, or vexatious," we are not persuaded Father's conduct rises to the same level

here where both he and Mother are dissatisfied with the custody order and filed appeals. Therefore, we deny Mother's request for reasonable attorney fees and costs.

With respect to Father's cross-appeal, we observe that the trial court thoroughly analyzed his issues in its November 27, 2013 Rule 1925(a) opinion. In his first issue, Father argues the trial court abused its discretion in failing to weigh the foregoing statutory factors in his favor. Specifically, Father alleges that Mother has failed to communicate with him regarding G.D., that she has made the custody exchanges chaotic, and that she has filed false abuse charges against him. Father alleges that G.D. has returned from Mother's custodial weekends with injuries, including "excessive bruising, a bump on her head[,] and a black eye. Something happened almost every weekend Mother had [G.D.]." Father's Brief at 56. In addition, Father alleges that Mother failed to provide the necessary care for G.D. while in her custody, and that G.D. "would return from Mother's weekends with behavior issues." *Id.* at 57.

The trial court concluded that all of Father's allegations were misplaced and/or not credible and not supported by the evidence. We conclude the record evidence overwhelmingly supports the trial court's analysis of Father's first issue on appeal. Thus, we discern no abuse of discretion. As such, we adopt the trial court's November 27, 2013 Rule 1925(a) opinion as

dispositive of Father's first issue. *See* Trial Court Opinion, 11/27/13, at 25-36.

In his second issue, Father argues the trial court committed an error of law by precluding testimony regarding Mother's care of J.G., her then seven-year-old son from a prior relationship, who is G.D.'s half-brother. Father argues this testimony was relevant to the trial court's consideration of Section 5328(a)(3), (4), (9), (10), and (12).

When faced with a question of the admissibility of evidence, our standard of review is very narrow. Because this decision is committed to the discretion of the trial court, we may reverse only upon a showing of an abuse of discretion or error of law. *Freed v. Geisinger Med. Ctr.*, 910 A.2d 68, 72 (Pa. Super. 2006). "[T]o constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party." *Id.*

In its November 27, 2013 Rule 1925(a) opinion, the trial court stated that Mother "testified as to G.D.'s sibling relationship with J.G., the childcare arrangements she has made for her son, his schooling, his relationship with her family, and his lack of contact with the biological [f]ather." Trial Court Opinion, 11/27/13, at 24. Otherwise, the trial court stated "there was no proffer of any relevant information as to J.G. which the court should have considered with regard to the best interest of G.D." *Id.* at 24-25. We discern no abuse of the trial court in this regard. Further, Father does not

state on appeal what additional information regarding J.G., if any, was relevant to this custody matter. It follows that Father does not assert how he was prejudiced by the trial court's preclusion of additional testimonial evidence regarding J.G. As such, we discern no abuse of discretion or error of law by the trial court.

In his third issue, Father argues the trial court erred in failing to enjoin Mother from disclosing the details of the orphans' court litigation and the custody matter on the Internet, to the media, or to any other third party. Father argues it is in the best interest of G.D. to maintain privacy in these matters, and that G.D.'s privacy trumps Mother's guarantee of freedom of speech under the Pennsylvania and United States Constitution.

The trial court set forth the following background with respect to this issue, which is supported by the testimonial evidence

> There was testimony presented at trial that [ ] Mother published the details of her custody dispute with [ ] Father on a website, and, a video presented that she gave interviews to news organizations as well …. [ ] Mother testified that[,] "I wanted the story out there so [G.D.] would know her mother fought for her …[.] I also thought this would help my case."

Trial Court Opinion, 11/27/13, at 32-33 (citation to record omitted). Significantly, the trial court noted that, "[t]here was also evidence presented at trial that [ ] Father's sister … started a website and also posted information about the adoption and custody cases, including negative statements made about [ ] Mother." *Id*. at 38. Moreover, Father admitted

on direct examination that he provided his sister with information posted on the website. *See* N.T., 6/5/13, at 194-195. In any event, Mother testified she does not plan to initiate any additional media coverage. *See* N.T., 6/3/13, at 290-291.

Father cites *In the Interest of M.B. and J.B.*, 819 A.2d 59 (Pa. Super. 2003), in support of his argument that "the privacy rights of the child are more important than the right of free speech, when failure to protect the child's rights would result in harm to the child." Father's Brief at 67. In that case, the Pittsburgh Post-Gazette newspaper appealed from the trial court's order denying its motion to open juvenile dependency proceedings. We held as follows.

> [W]hile there is a rebuttable constitutional presumption that juvenile dependency proceedings are open to the public, our courts possess an inherent power to control access to their proceedings and may deny access when appropriate. Once an interested party seeks access, however, the party seeking to keep the proceedings closed may rebut the presumption of openness by demonstrating that: (1) closure serves a compelling governmental interest, and (2) no less restrictive means to serve that interest exists.

*In the Interest of M.B. and J.B.*, *supra* at 60. We found that "the parties seeking closure have demonstrated a compelling interest in protecting the privacy of the minor children and that no less restrictive means than total closure exists." *Id.* As such, we affirmed the order.

Father's reliance on *In the Interest of M.B. and J.B.*, is misplaced in this case which did not involve the press seeking access to the custody proceedings. Herein, the trial court specifically found that "based on … Mother's testimony that no movie deal or further media coverage was forthcoming, and no evidence to the contrary being submitted by … Father, the [trial] court did not abuse its discretion in not 'enjoining' … Mother from pursuing what amounts to speculative endeavors." Trial Court Opinion, 11/27/13, at 38. Therefore, for all the foregoing reasons, Father's issues on appeal fail.

Accordingly, we reverse the custody order with regard to the shared legal and physical custody award. We remand this matter to the trial court to fashion a new custody order granting Mother sole legal and primary physical custody, and setting forth a partial physical custody schedule for Father that is in G.D.'s best interest.

Order reversed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/30/2014