J-S41016-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| B.V. O/B/O T.V., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| J.W. | : | No. 746 MDA 2020 |

Appeal from the Order Entered April 17, 2020
In the Court of Common Pleas of Lackawanna County Civil Division at
No(s): 2019-FC-41660

BEFORE: KUNSELMAN, J., McLAUGHLIN, J., and STRASSBURGER, J.[*]

MEMORANDUM BY McLAUGHLIN, J.:          **FILED SEPTEMBER 22, 2020**

B.V. ("Father") appeals on behalf of his three-year old daughter T.V. from the order denying the protection from abuse ("PFA") petition he filed on T.V.'s behalf. The petition alleged T.V. needed protection from J.W., who is engaged to T.V.'s mother, L.P. ("Mother"). We affirm.

The trial court set forth the procedural and factual history, which we adopt and incorporate herein. Trial Court Opinion, filed Jun 9, 2020, at 1-4, 6-14 ("1925(a) Op."). Father and Mother are involved in an ongoing custody dispute. In December 2019, Father filed a PFA petition on T.V.'s behalf, alleging, among other things, that J.W. caused bruises on T.V.'s legs. The parties entered into a civil stay away agreement in January 2020. In February 2020, Father filed a second PFA petition, alleging, among other things, that

---

[*] Retired Senior Judge assigned to the Superior Court.

J.W. had caused additional bruises on T.V.'s leg. He also filed a petition for contempt, alleging that J.W. had violated the stay away order.

The trial court held a hearing, and, after weighing the testimony and evidence presented at the hearing, denied the PFA petition and the contempt petition. Father filed a Notice of Appeal on T.V.'s behalf.

Father raises the following issues:

> I. Whether the trial court erred and or abused [its] discretion in denying [T.V.'s] petition for protection from abuse contrary to the evidence presented.
>
> II. Whether the trial court erred and or abused [its] discretion in failing to consider all factors in determining the best interests of the minor child, as enumerated in 23 [Pa.C.S.A.] § 5337(h) . . . , before dismissing [T.V.'s] protection from abuse petition.
>
> III. Whether the trial [court] erred and or abused [its] discretion in failing to con[s]ider the report and rec[o]mmendation of the guardian ad litem before dismissing [T.V.'s] protection from abuse petition.
>
> IV. Whether the trial court erred and or abused [its] discretion in failing to conduct an in camera review with the minor child.

Father's Br. at 3.

Our standard of review in an appeal from a PFA order is well-settled:

> In an appeal from a PFA action, this Court reviews the trial court's legal conclusions for an error of law or an abuse of discretion. Assessing the credibility of witnesses and the weight to be accorded to their testimony is within the exclusive province of the trial court as the fact finder.

*S.W. v. S.F.*, 196 A.3d 224, 230 (Pa. Super. 2018) (citation, quotation marks, and brackets omitted).

Father first claims the court erred in denying the PFA petition because such a finding was contrary to the evidence. He claims T.V. "had a verifiable injury – bruising to her legs," and Child told Father and others that J.W. had caused the injury. Father's Br. at 12. He claims that the evidence was sufficient to grant the PFA. He claims T.V's testimony was consistent and credible and the court erred in finding Father and his family had coached T.V., especially where the court did not conduct an *in camera* interview of T.V. He further maintains that the court should have accorded more weight to the testimony and recommendation of T.V.'s guardian *ad litem* ("GAL").

A person seeking a PFA must "prove the allegation of abuse by a preponderance of the evidence." 23 Pa.C.S.A. § 6107(a). "[T]he preponderance of the evidence standard is defined as the greater weight of the evidence, *i.e.*, to tip a scale slightly." **Raker v. Raker**, 847 A.2d 720, 724 (Pa.Super. 2004).

The trial court explained that it denied the petition for a PFA because Father failed to carry his burden of proof. It noted that the allegations in this case "take place against the backdrop of an ongoing custody dispute over T.V." between Father and Mother. 1925(a) Op. at 6. The court considered all the evidence, "particularly the CAC/NEPA forensic interview of T.V. and the video of T.V.'s statements proffered by [Father] during the hearing," and concluded that Father and other adults "heavily influenced" the statements. *Id.* After making weight and credibility determinations, the court concluded that the evidence did not support the entry of a PFA order. After reviewing the

briefs, trial court record, and the trial court opinion of the Honorable Julia K. Munley, we affirm on the basis of the trial court opinion. *Id.* at 4-14.

Father next argues the court abused its discretion in failing to consider the custody factors[1] before dismissing the PFA petition. He claims the court should have conducted the best interest analysis because custody was an inevitable issue in the case, and that failing to conduct such an analysis was "manifestly unjust and unreasonable and was not supported by the record, considering the testimony and evidence in this case." Father's Br. at 21.

The trial court concluded that it did not err by not applying the relocation factors set forth in Section 5337(h) or the child custody factors in Section 5328. It stated that it "did not explicitly consider any custody factors because it did not make a custody award in denying" the PFA petition. The court explained that "[t]here [was] no need to make a custody determination between [Father] and L.P. in this PFA matter." 1925(a) Op. at 17-18. The court noted that Mother was an interested party in any custody determination, but was not a party to the PFA action. We agree and, after review of the briefs, trial court record, and trial court opinion, we affirm on the basis of the trial court opinion. 1925(a) Op. at 17-18.

_____

[1] Father references the factors contained in 23 Pa.C.S.A. § 5337(h), which a court must review when determining whether a party in a custody action may relocate. It appears, however, that the more applicable section may be 23 Pa.C.S.A. § 5328(a), which contains the best interest factors a court must consider when addressing custody disputes.

In his third argument, Father argues the court abused its discretion in failing to consider the GAL's report and recommendation before dismissing the PFA petition. He notes the court disagreed with the GAL's evaluation of T.V.'s credibility and the consistency of T.V.'s statements, but that this finding was "manifestly unjust and unreasonable and was not supported by the record." Father's Br. at 22.

Contrary to Father's argument, the trial court reviewed the GAL report and considered her testimony, and gave the testimony "the weight it deemed appropriate." 1925(a) Op. at 16. The court in its Opinion concluded that it did not err by disagreeing with the recommendation, noting the "entire record support[ed] such a disagreement." *Id.* at 16-17. The court reasoned it was the function of the trial court, not the GAL, to determine whether a PFA should be granted. We conclude the court did not abuse its discretion. After a review of the brief, the record, and the trial court opinion, we affirm on the basis of the trial court opinion. **See** 1925(a) Op. at 10-11, 16-17.

In his final argument, Father claims the court erred in failing to conduct an *in camera* interview of T.V. He notes that the parties stipulated to the report of the GAL, and claims that "[i]f the court was unsure of the consistent statements gathered by the GAL in this case, as well as the CAC and Father and Grandmother, then the trial court should have conducted an *in-camera* review of minor child to perform its own *voir dire* and to assess child's veracity." Father's Br. at 23 (italics added).

The court concluded that an *in camera* interview of T.V. was unnecessary. Mother objected to T.V. providing testimony, and neither party asked the court to compel the testimony. The parties further agreed to present the video statements of T.V. The court concluded it did not abuse its discretion in not conducting an *in camera* review. We agree and, after reviewing the briefs, trial court record, and trial court opinion, we affirm on the basis of the trial court opinion. **See** 1925(a) Op. at 14-16.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/22/2020

B.V. o/b/o T.V., A Minor           :   IN THE COURT OF COMMON PLEAS
          Plaintiff               :     OF LACKAWANNA COUNTY
                                      :
VS.                               :    CIVIL ACTION – LAW
                                      :    PROTECTION FROM ABUSE
J.W.,                               :
          Defendant          :    2019 – FC – 41660

**June 9, 2020**                                         **MUNLEY, JULIA, J.**

MAURI B. KELLY LACKAWANNA COUNTY 2020 JUN -9   CLERK OF JUDICIAL RECORDS FAMILY COURT DIV.

## OPINION

Plaintiff B.V. appeals this Court's denial of a Protection from Abuse ("PFA") Order he sought on behalf of his child, T.V., a minor[1]. Defendant J.W. is the paramour of T.V.'s mother, L.P. Plaintiff and L.P. are involved in an ongoing dispute regarding custody of T.V. docketed at B.V. v. L.P, 2020-FC-40185. In this matter, Plaintiff alleges that Defendant committed physical abuse against T.V. on separate occasions. Rendering decisions that ensure the safety and protection of all minor children is a duty this Court holds in the highest regard. However, for the reasons set forth below, Plaintiff did not sustain his burden of proof with competent, credible evidence to justify an order protecting T.V. from Defendant.

## I.    BACKGROUND

T.V. is a three-year old child. On December 5, 2019, Plaintiff filed a Petition for Protection from Abuse on T.V.'s behalf. Docket No. 1 ("First Petition"). In the First Petition, Plaintiff alleged that T.V. had a bruise on her knee and T.V. told Plaintiff that Defendant bumped her. Id. at ¶ 11. Plaintiff alleged that Defendant's response when questioned about the bruise was, "[w]hat if [I] did, what are you going to do about it [?]" Defendant also allegedly sent a picture of the horror movie character Chuckie brandishing a knife to Plaintiff and Defendant

---

[1] Plaintiff B.V. filed this action on behalf of his child T.V. Although T.V. is the primary protected party, this Court refers to B.V. as "Plaintiff" and T.V. by her initials to avoid confusion.

SCANNED WM



stated that he had backup. Id.. Plaintiff's First Petition was granted *ex parte* and a temporary

PFA Order was issued that same date. Docket No. 2.

Rather than proceed with a full hearing on Plaintiff's First Petition, Plaintiff and

Defendant entered into a Civil Stay Away Agreement adopted as an Order of Court on January 3,

2020. Docket Nos. 10, 11. Defendant agreed to "not abuse, harass, or stalk T.V. or [Plaintiff],

by any manner whatsoever, including by way of third party contact and/or social media."

Defendant also agreed to not "subject [T.V.] to any discipline whatsoever at any time." Id. at ¶

3a.

At the time of the entry of the Civil Stay Away Agreement as an Order of Court,

Defendant further agreed that he would "not be in the presence of minor child T.V., nor have any

contact whatsoever with [m]inor child for a period of three (3) months, beginning on the date of

adoption of this Agreement by the Court." Id. at ¶ 3b. Additionally, Defendant agreed to submit

a Pennsylvania Criminal Background Check and ChildLine clearance to Plaintiff's counsel prior

to resumption of contact with T.V. Id. at ¶ 3c.

Regarding contact with Plaintiff, Defendant agreed that he would not have any contact

with Plaintiff moving forward and Defendant would not be present at any custodial exchanges

between Plaintiff and L.P. Id. at ¶¶ 3d, 3e. Plaintiff, Defendant, and L.P. signed the Civil Stay

Away Agreement. In signing the Civil Stay Away Agreement, each party, including L.P.,

acknowledged that they could pursue contempt findings if the Civil Stay Away Agreement was

allegedly violated. Id. at ¶ 4. By Order dated June 3, 2020, the Honorable Trish Corbett

dismissed the temporary PFA Order generated from Plaintiff's First Petition. Docket No. 13.

On February 6, 2020, Plaintiff filed another Petition for Protection from Abuse on behalf

of T.V. ("Second Petition"). Docket No. 14. In the Second Petition, Plaintiff alleged that on or

about February 1, 2020 to February 3, 2020, T.V. had contact with Defendant and that Defendant caused six bruises on her leg and shin. Id. at ¶ 11. Plaintiff noted that the bruises were similar to prior injuries and that T.V. was "scared of Defendant" and "in fear of him." Id. Plaintiff noted in the Second Petition that the Lackawanna County Office of Youth and Family Services ("OYFS") was involved and a forensic interview with the Children's Advocacy Center of Northeastern Pennsylvania ("CAC/NEPA") was scheduled as a part of the OYFS investigation. Id. Based on the allegations, Judge Corbett granted a temporary PFA Order and a hearing was scheduled concerning the allegations contained within the Second Petition. Docket No. 15. Plaintiff also filed a Petition for Contempt alleging that the Civil Stay Away Agreement was violated by nature of the new allegations. Docket No. 16.

Also on February 6, 2020, Plaintiff filed a Petition for Emergency Relief against L.P. at 2020-FC-40185, raising the same allegations[2]. This Court notes that temporary sole physical and legal custody of T.V. was awarded to Plaintiff at the *ex parte* hearing, but that Plaintiff's Petition for Emergency Relief was ultimately denied by Judge Corbett on February 13, 2020. As part of the emergency custody proceedings, Jennifer McCambridge, Esq. was appointed Guardian ad Litem for T.V.

A hearing on Plaintiff's Second Petition was held on February 20, 2020. This Court heard testimony from Attorney McCambridge on behalf of T.V.'s best interests, as well as testimony from Plaintiff, Plaintiff's Mother, and Defendant. Rather than conduct an *in camera* interview of T.V. counsel for the parties agreed to submit the video of the interview of T.V. by a

---

[2] This Court took judicial notice of proceedings in the custody action between Plaintiff and L.P. at the February 20, 2020 PFA hearing. N.T. at 5. No objection was raised by the parties at that time. This Court denied Defendant's request to find collateral estoppel in the PFA matter based on Judge Corbett's findings in the custody action.

forensic interviewer from CAC/NEPA, which was part of the investigation conducted by OYFS pursuant to the Child Protective Services Law, 23 Pa.C.S. §6301, *et seq.*, for the Court's subsequent review and consideration as evidence in this case. During the hearing, Plaintiff offered into evidence -- with no objection from Defendant -- a video of T.V. making statements to Plaintiff recorded on a smartphone on or about February 4, 2020, which the Court also reviewed.

After careful consideration of all the testimony at the hearing, weighing the statements of T.V. in the CAC/NEPA video and the video proffered by Plaintiff, the recommendation of the Guardian ad Litem, and resolving the conflicts in testimony, this Court denied the requests for relief in Plaintiff's Second Petition and Plaintiff's Petition for Contempt on April 17, 2020. Docket Nos. 22, 23. A timely appeal followed by Plaintiff. Plaintiff raises four (4) arguments in his Concise Statement of Errors, addressed below in reverse order for ease of disposition. Docket No. 28

## II. ANALYSIS

### a. *The Weight of the Evidence in this Matter Supports the Denial and Dismissal of Plaintiff's Second Petition and Plaintiff's Petition for Contempt*

Plaintiff argues that this Court erred or abused its discretion when it denied the Second Petition and Petition for Contempt contrary to the evidence presented by both parties. In review of the record, Plaintiff's argument fails.

The purpose of the PFA Act, 23 Pa.C.S. § 6101, *et. seq.* is to protect victims of domestic violence from the perpetrators of that type of abuse and to prevent domestic violence from occurring. Ferko-Fox v. Fox, 68 A.3d 917, 921 (Pa. Super. Ct. 2013)(citations omitted).

"Abuse" is broadly defined under the PFA statute in relevant part as follows:

> The occurrence of one or more of the following acts between family or household members [...] :
>
> (1) Attempting to cause or intentionally, knowingly or recklessly causing bodily injury, serious bodily injury [...]
>
> (2) Placing another in reasonable fear of imminent serious bodily injury.
>
> [...]
>
> (4) Physically [...] abusing minor children, including such terms as defined in Chapter 63 (relating to child protective services).
>
> (5) Knowingly engaging in a course of conduct or repeatedly committing acts toward another person, including following the person, without proper authority, under circumstances which place the person in reasonable fear of bodily injury [...]

23 Pa. C.S. § 6102.

In PFA matters, plaintiffs must prove allegations of abuse by a preponderance of the evidence. 23 Pa. C.S. § 6107(a). "[T]he preponderance of evidence standard is defined as the greater weight of the evidence, i.e., to tip a scale slightly is the criteria or requirement for preponderance of the evidence." Raker v. Raker, 847 A.2d 720, 724 (Pa. Super. Ct. 2004)(citing Commonwealth v. Brown, 567 Pa. 272, 786 A.2d 961, 968 (2001), cert. denied, 537 U.S. 1187, 123 S.Ct. 1351, 154 L.Ed.2d 1018 (2003)). "[I]f the alleged victim is required to demonstrate that abuse has in fact occurred, then a third party, in advancing the same accusations, must, at the very least, bear the same burden." In re Penny R., 353 Pa. Super. 70, 74, 509 A.2d 338, 340 (1986).

PFA hearings are bench trials. Assessing the credibility of witnesses and the weight to be accorded to their testimony is within the exclusive province of the trial court as the fact finder.

Karch v. Karch, 885 A.2d 535, 537 (Pa. Super. Ct. 2005). The petitioner's testimony is sufficient to grant a PFA Order if it is believed by the trial court. Custer v. Cochran, 933 A.2d 1050, 1058 (2007). Likewise, if testimony is insufficient or not believed by the trial court, it is within the court's discretion to deny a petition after a hearing. See Williamson v. Williamson, 402 Pa. Super. 276, 286, 586 A.2d 967, 972 (1991) ("[T]he finder of fact is entitled to weigh evidence and assess credibility. The finder of fact may believe all, part or none of the evidence presented to it.").

The allegations of abuse in this matter take place against the backdrop of an ongoing custody dispute over T.V. between Plaintiff and Defendant's paramour, L.P., the mother of the minor child. "The Protection from Abuse Act was enacted to provide immediate protection from physical abuse; it was not intended to replace other, established proceedings for the determination of permanent custody of children." Rosenberg v. Rosenberg, 350 Pa. Super. 268, 271, 504 A.2d 350, 351, fn. 1 (1986); see also Snyder v. Snyder, 427 Pa. Super. 494, 500, 629 A.2d 977, 980, fn.1 (1993).

In consideration of all the evidence, particularly the CAC/NEPA forensic interview of T.V. and the video of T.V.'s statements proffered by Plaintiff during the hearing, this Court concludes that T.V.'s statements regarding alleged abuse are so heavily influenced by Plaintiff and other adults in her life as not to be credible. Given Plaintiff's arguments on appeal, a thorough review of the record is appropriate.

  *i. The Relationship Among Plaintiff, Plaintiff's Family, Defendant, and L.P.*

This Court first notes the ongoing hostility between Plaintiff and Defendant that extends to members of Plaintiff's family. This hostility centers on the breakup of Plaintiff and L.P. after a long relationship. According to Plaintiff, Plaintiff and L.P. dated for ten years and had a

relationship since both were in eighth grade. N.T. at 46-48. Defendant testified that he began a romantic relationship with L.P. in July 2019, which Plaintiff discovered in September 2019. Id. at 66.

When Plaintiff and L.P. broke up, Plaintiff caught L.P. talking on the phone with Defendant after Plaintiff came home from work, according to Plaintiff's testimony. Id. at 55. Plaintiff testified that he messaged Defendant on social media, as Plaintiff "was kind of out of the loop being that [Defendant] was just with my cousin and I don't know what was really happening." Id. Plaintiff testified that he faulted L.P. and tried to reach out to Defendant civilly regarding the breakup. Id.

Additionally, Defendant and Plaintiff's mother, T.V.'s paternal grandmother, are neighbors. Id. at 44. Plaintiff's mother testified in this matter. She also commented on the relationship between Defendant and L.P. as follows:

> Now, we were all confused by all of this time factor here, [...] together in October, [...] getting married in January, who knows what's in March, who knows.

Id. at 62.

The relationship between the parties is even further intertwined. Defendant is also the biological father of Plaintiff's cousin, a minor, also subject to a separate custody dispute. Id. at 29. Plaintiff's mother, in her testimony, also referenced the custody dispute between Defendant and her niece and mentioned, without explanation, abuse in that matter. Id. at 63. This Court notes that Plaintiff's mother, T.V.'s grandmother, was also listed as a protected party in both temporary PFA orders. Docket No. 2, 15.

Adult relationships can be complicated and emotional as individuals change partners, especially when children are involved. From the testimony of Plaintiff and Plaintiff's mother, the conflict among Plaintiff, Plaintiff's family, Defendant, and L.P. is clear. It is not

unreasonable for Plaintiff and Plaintiff's family to have such a strong emotional response to Defendant becoming L.P.'s new partner when Defendant is also the father of Plaintiff's cousin and may soon become T.V.'s stepfather. The Court carefully considered the history of the parties and the clear bitterness in this blended family in reviewing the evidence and in considering the serious allegations of physical abuse against T.V on multiple occasions.

ii. *The Threats Exchanged By Plaintiff and Defendant Using Social Media and the Bruises Sustained by T.V. in December 2019*

In support of the Second Petition, Plaintiff referenced the prior incidents leading to the First Petition and the Civil Stay Away Agreement. At the hearing before this Court, Plaintiff offered Facebook messages and photos regarding an incident in December 2019. The relevant Facebook messages between the parties began after Plaintiff sent a video to L.P. regarding bruising on T.V.'s leg. N.T. at 25-29. Plaintiff testified he sent a message to Defendant, "I hope […] I don't find out you had your hands on my daughter." Id. at 27. As noted above, Defendant replied back, "What if I did? What are you and your stumpy leg going to do about it?" Id. Defendant also sent a picture to Plaintiff of the horror movie character Chucky holding a knife. Id. at 29.

Plaintiff responded to Defendant, "You better hope I don't find out you had your hands on [T.V.] […] I'd hate to see [Defendant's minor child, Plaintiff's cousin] get taken from you." Id. In the subsequent messages, Defendant asked Plaintiff to speak with him about the matter and Plaintiff responded by giving Defendant his address. Id. at 31. Defendant replied to that message, according to Plaintiff, by stating, "I know where your mommy lives. Maybe we can walk the dog together." Id. at 31.

At the hearing, Plaintiff also offered pictures of a bruise on T.V.'s knee from December 2019. Id. at 35. Plaintiff testified that T.V. pulled up her pant leg and volunteered to Plaintiff

that Defendant caused the bruise. Id. These events caused Plaintiff to file the First Petition and resulted in the Civil Stay Away Agreement of January 2020 among Plaintiff, Defendant, and L.P. Id. at 38-39.

### iii. The Allegations of Abuse in the Second Petitions, the Video Evidence, and Defendant's Social Media Postings

As for the allegations of abuse against T.V. giving rise to the Second Petition, Plaintiff testified that on February 4, 2020, T.V. pulled up her pant leg and showed Plaintiff six bruises. According to Plaintiff, T.V. told Plaintiff that Defendant caused the injury. Id. at 39. Plaintiff recorded T.V. making statements that Defendant caused the injury and this video was played in open court at the time of the hearing. Id. at 41. Photographs depicting the bruises were also offered into evidence. Id. at 42. Plaintiff was very specific in his testimony regarding the injury. T.V. told him that she sustained six black and blue marks on her left leg and that Defendant was responsible. Id. at 41-42. In addition to Plaintiff, T.V. allegedly also made disclosures of abuse by Defendant to paternal grandmother, per her testimony. Id. at 80-81.

In Defendant's testimony, Defendant admitted to sending the Facebook messages to Plaintiff that resulted in the Civil Stay Away Agreement. Id. at 70-71. Defendant explained his anger with the situation coming from a belief that Plaintiff was harassing L.P. and Defendant was then being accused of hurting T.V. Id. at 71. Defendant testified that he was never alone with T.V. and that L.P. was always in the room. Id. at 88-89. Defendant denied that he ever caused the bruises to T.V. in February 2020 in any manner, including in the ways that T.V. explained in her statements. Id. at 74-75. This Court found Defendant's statements to be credible in this regard.

Defendant is not unfaultable. Defendant's behavior sending threatening Facebook messages to Plaintiff is not condoned by this Court. Moreover, by becoming engaged to L.P.

shortly after the Civil Stay Away Agreement was entered shows that Defendant was not concerned about inflaming or escalating tension between the parties.

This Court also heard evidence regarding Defendant's other use or misuse of social media. On cross-examination, Defendant admitted he posted messages on Facebook regarding anger, suicide, and mental illness. Id. at 77-81, 85-88. However, several of these posts pre-dated any of the allegations made in this matter. Id. at 87-88. Defendant put his Facebook posts in context in his testimony and this Court does not consider the posts or Defendant's testimony regarding the posts to be relevant evidence in disposition of whether Defendant abused T.V. in February 2020. This Court gave this testimony very little weight in its consideration. What is important to disposition in this matter is whether Defendant abused T.V. or violated the Civil Stay Away Agreement. This Court believes from Defendant's testimony that Defendant was not in T.V.'s presence since the parties and L.P. all entered into the Civil Stay Away Agreement in January 2020.

### iv. The Report and Recommendation of the Guardian ad Litem

This Court also heard from the Guardian ad Litem for T.V. Plaintiff separately raises this Court's consideration of the Guardian ad Litem's testimony and recommendation, but discussion is appropriate here. Attorney McCambridge was appointed as T.V.'s Guardian ad Litem in the underlying custody case, B.V. v. L.P, 2020-FC-40185. Per Attorney McCambridge's testimony, T.V. disclosed to Attorney McCambridge that Defendant hurt her on more than one occasion. Id. at 18. T.V. also told Attorney McCambridge that Defendant: scratched T.V.'s arms; caused marks on T.V's legs; and laughed or commented at T.V in a mocking manner. Id. at 18-19. T.V. also told Attorney McCambridge that she was afraid of Defendant. Id. at 19. As a result, Attorney McCambridge recommended that T.V. have no contact with Defendant or, at a

minimum, no unsupervised contact with Defendant. Id. at 19-20. Although this was a recommendation made for resolution of the Second Petition, this Court believes Attorney McCambridge's recommendation is more suited for a custody proceeding.

At the time of the hearing on the Second Petition, Attorney McCambridge had not met with any adults involved in the PFA or custody matters. Id. Attorney McCambridge also did not review the video of the CAC/NEPA video. Id. at 21. At the time of the interview with the Guardian ad Litem, T.V. did not or could not tell Attorney McCambridge the last time she was with Defendant. Id. at 22-23. Additionally, this Court notes that Plaintiff was the parent that brought T.V. to the interview with Attorney McCambridge, not L.P. Id. at 20-21.

Guardians ad litem play critical roles in custody proceedings, as they assist courts in determining the best interests of the child. See Pa. R. Civ. P. 1915.11-2(a). However, a guardian ad litem is not a judicial or quasi-judicial officer and a trial court may not delegate its judicial powers to them. C.W. v. K.A.W., 774 A.2d 745, 749 (2001).

In this matter, this Court carefully considered Attorney McCambridge's testimony and recommendations. Attorney McCambridge has extensive experience as a prosecutor in cases involving the physical and sexual abuse of children. She is highly qualified to represent the best interests of T.V. At the time of this hearing, however, Attorney McCambridge did not have the benefit of reviewing the CAC/NEPA video of T.V.'s statements and she was hearing from the parties for the first time as well. In light of the CAC/NEPA video, this Court gave Attorney McCambridge's testimony the weight it deemed appropriate, considering she only heard from T.V. This Court appreciates Attorney McCambridge's efforts in representing T.V.'s best interests and testifying at the hearing in this matter under such time constraints.

### v.    The CAC/NEPA Forensic Interview

Finally, this Court reviewed the twenty-two minute video of the CAC/NEPA forensic interview of T.V. after the hearing. At the time of the PFA hearing, L.P., T.V.'s mother, represented by separate counsel, did not consent to this Court conducting an *in camera* interview of T.V. Id. at 5-6. In lieu of an *in camera* interview, counsel agreed that they would present the CAC/NEPA interview video and the video taken by Plaintiff of T.V.'s statements without hearsay objections. Id. As discussed further below, no specific objection was lodged by Defendant as to the admissibility of the CAC/NEPA forensic interview video and this Court considered it as a crucial piece of evidence in rendering a decision[3].

T.V. indicated that Plaintiff took her to the CAC/NEPA forensic interview and medical examination. From the CAC/NEPA forensic interview, it is clear that T.V. is a beautiful, bright, and happy child who is full of energy. It is clear that T.V. has incredible potential. It is likewise clear that T.V. was very active in response to the CAC/NEPA interviewer's questions, bouncing up and down, kicking her legs, swinging her head and arms, arching her head and neck back, pounding her fists and crayons into a table, and throwing herself backward into the couch. In contrast, when the forensic interviewer left the room, T.V. sat and stood relatively still and drew pictures. During the interview, T.V. also provided conflicting responses to questions and her description of the incidents varied significantly from the testimony provided during the hearing by Attorney McCambridge, Plaintiff, and Plaintiff's mother. This Court found very significant

---

[3] Neither party marked the CAC/NEPA interview video as an exhibit. By way of separate order, this Court attaches a DVD copy of the CAC/NEPA interview of T.V. as Joint Exhibit 1. Plaintiff has also been directed to file of record the video he took of T.V. on February 4, 2020, as this video was played in open court during the hearing by agreement of the parties, but otherwise not made a part of the record.

in the CAC/NEPA interview that T.V. attributed bruises on her left and right legs to Defendant when the allegations and testimony regarding the Second Petition focused on six bruises to T.V.'s left leg. T.V. also stated that Defendant used a television to bump her on the leg. T.V. explained that she flew in the air, landed on L.P., and they both landed on the grass. T.V. also provided robotic responses at several times during the interview. This Court carefully weighed T.V.'s statements in the CAC/NEPA interview, understanding that she is three years old and observing her very active behavior during the interview. From the CAC/NEPA forensic interview, this Court concluded that T.V. is either being directly influenced by adults in her life or she is responding to changes in her life by mimicking or projecting the resentments and rancor between Plaintiff and Plaintiff's family on one side and Defendant and L.P. on the other side. As such, the Second Petition was denied.

Relevant parts of Plaintiff's testimony also supported denial of the Second Petition and dismissal of the PFA Order. Plaintiff agreed that T.V. is a very active child and likes to play. Id. at 54. Plaintiff admitted that he owns an inflatable bouncy house at his home. Id. at 54. Per Plaintiff, when OYFS investigated the abuse alleged in February 2020, the bouncy house was inflated and in use in Plaintiff's home. Id. Plaintiff denied that the bouncy house was up when T.V., sustained the bruising giving rise to the First Petition and Second Petition. Id. Additionally at the hearing, paternal grandmother admitted T.V. recently was injured in her home running around the kitchen. Id. at 80-81. It is more likely than not that T.V.'s bruises were caused by play typical of children T.V.'s age.

This Court notes that multiple witnesses testified that T.V. told them she was afraid of Defendant. The PFA Act "does not require actual physical harm be related for a PFA Order to issue, "reasonable fear" is sufficient." S.W. v. S.F., 196 A.3d 224, 231 (Pa. Super. Ct. 2008)

(adopting trial court opinion) (citing 23 Pa. C.S.A. § 6102 and <u>Fonner v. Fonner</u>, 731 A.2d 160 (Pa. Super. Ct. 1999)). After careful consideration of the evidence and testimony and factoring T.V.'s age into the determination, this Court concludes that T.V.'s alleged fear of bodily harm by Defendant is not reasonable under the particular circumstances and does not support a PFA Order being entered. This Court believes that T.V.'s alleged fear of Defendant is created and/or exacerbated by the conflict among Plaintiff, Plaintiff's family, Defendant, and L.P.

In thorough consideration of the evidence and testimony, Plaintiff failed to meet his burden to support a PFA Order protecting T.V. from Defendant. Thus, Plaintiff's Second Petition and Petition for Contempt were denied. This Court did not err or abuse its discretion.

> **b.  *The Parties Agreed for this Court to Review the CAC/NEPA Interview Video and the Video Taken By Plaintiff on February 4, 2020 In Lieu of An In Camera Interview. Minor Child's Statements to the Guardian ad Litem Were Also Considered as Part of the Guardian ad Litem's Testimony***

Plaintiff believes this Court erred or abused its discretion in not conducting an *in camera* interview of Minor Child during the hearing on Plaintiff's Second Petition. Although this is not a custody proceeding, interviews of minor children *in camera* are common in custody matters and the process is governed by Pennsylvania Rule of Civil Procedure 1915.11. "As to the interview of a child, Pennsylvania Rule of Civil Procedure 1915.11(b) is discretionary and does not mandate that a trial court interview a child in a custody matter. [...] Likewise, Pennsylvania Rule of Civil Procedure 1915.11(c) does not mandate a child's attendance." <u>T.D. v. E.D.</u>, 194 A.3d 1119, 1125 (2018).

In the underlying custody action, <u>B.V. v. L.P</u>, 2020-FC-40185, Plaintiff filed a Petition for Emergency Special Relief in Custody citing the same allegations present in this matter. The custody petition was heard by Judge Corbett and denied prior to the PFA hearing on the Second Petition. T.V. was not interviewed *in camera* in that hearing and Judge Corbett's decision was

not appealed. As noted above and more thoroughly below, this Court was not bound by and did not rely upon Judge Corbett's custody determinations in the resolution of the Protection from Abuse matter. Defendant requested that this Court consider the transcript from the emergency custody hearing as evidence, but this Court did not do so.

An *in camera* interview of T.V. was not necessary to resolve the allegations contained in the Second Petition. At the time of the hearing, T.V.'s mother, L.P., objected to T.V. providing testimony. Neither Plaintiff nor Defendant asked this Court to compel T.V.'s testimony as a party to this matter. T.V. was considered by this Court to be an unavailable witness and her out-of-court statements were subject to the rule against hearsay and hearsay exceptions[4].

At the beginning of the hearing, the parties agreed to present video statements of T.V. in the CAC/NEPA forensic interview and in a cell phone video taken by Plaintiff. N.T. at 6-13. Thus, Plaintiff and Defendant clearly stipulated to the admissibility of the CAC/NEPA forensic interview and Plaintiff's video of T.V.'s statements.

"It is well established that hearsay evidence, admitted without objection, is accorded the same weight as evidence legally admissible as long as it is relevant and material to the issues in question." Jones v. Spidle, 446 Pa. 103, 106, 286 A.2d 366, 367 (1971)(citations omitted). "Furthermore, evidence admitted by stipulation or consent of both parties is fully competent and accorded full weight although it contains otherwise inadmissible hearsay statements." Id. (citations omitted). In this matter, the hearing proceeded without a single hearsay objection as to any of T.V.'s statements to Plaintiff, to Plaintiff's mother, to the CAC/NEPA forensic interviewer, or to Attorney McCambridge. As stated above, Attorney McCambridge's

---

[4] The Tender Years Hearsay Act, applicable in certain criminal cases, does not apply to Protection from Abuse matters. K.D. by K.H.-D. v. J.D., 696 A.2d 232, 234–35 (Pa. Super. Ct. 1997).

experience as a child abuse prosecutor is respected by this Court and this Court carefully considered T.V.'s statements to her, which came in as evidence in the hearing without hearsay objection. In sum, all of T.V.'s out-of-court statements were considered admissible evidence and given appropriate weight.

Additionally, as a party to the Second Petition, T.V. was not required to testify at the full evidentiary hearing. See e.g. S.W., 196 A.3d at 231-33 (affirming trial court's entry of an order protecting minor child from a parent in a matter where the trial court judge spoke to a minor child ex parte for a temporary order, but minor child did not testify at the final hearing). This Court stated on the record that it supported the decision by counsel for the parties to proceed without an *in camera* interview of T.V. N.T. at 6. Requiring T.V., a three-year old little girl, to testify at the hearing on the Second Petition after providing statements to Plaintiff, Plaintiff's mother, the CAC/NEPA forensic interviewer, and the Guardian ad Litem would be potentially harmful to T.V. and subject to additional arguments from Defendant that T.V.'s testimony was influenced or otherwise tainted. This Court did not err or abuse its discretion in not conducting an *in camera* interview of T.V.

### c. *This Court Carefully Considered the Guardian ad Litem's Testimony and Recommendations*

Plaintiff's next alleged error focuses on the Guardian ad Litem's report and recommendation and testimony at the hearing on the Second Petition. As noted above, this Court carefully reviewed Attorney McCambridge's report and recommendation and deliberated after hearing her testimony, among all the evidence and testimony in this case. This Court gave Attorney McCambridge's testimony the weight it deemed appropriate. It is not error when a court disagrees with a Guardian ad Litem's report and recommendation, whether made for custody purposes or for the purposes of a PFA hearing, when the entire record supports such a

disagreement. Moreover, it is not the Guardian ad Litem's role to determine whether a PFA order should be granted. That function lies solely with the trial judge. As such, this Court did not err or abuse its discretion.

### d. Consideration of the Relocation Factors in Custody is Not Warranted in a PFA Matter When A Separate Custody Determination Has Been Made

Finally, Plaintiff alleges this Court committed error or abused its discretion when it did not consider the relocation factors set forth in the Child Custody Act, 23 Pa.C.S. §5337(h). Although there is overlap between the PFA Act and the Child Custody Act, Plaintiff's argument is better suited for an appeal of a final order in custody.

As part of the PFA Act, this Court "may grant any protection order or approve any consent agreement to bring about a cessation of abuse of the plaintiff or minor children." 23 Pa. C.S. § 6108(a). A Court Order may include:

> Awarding temporary custody of or establishing temporary visitation rights with regard to minor children. In determining whether to award temporary custody or establish temporary visitation rights pursuant to this paragraph, the court shall consider any risk posed by the defendant to the children as well as risk to the plaintiff.

23 Pa. C.S. § 6108(a)(4).

Under the Child Custody Act, "[i]n ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child," and seventeen factors are delineated. 23 Pa. C.S. § 5328(a). Likewise, the relocation statute cited by Plaintiff, provides ten additional best interests factors when courts consider whether to grant a proposed relocation in custody matters. 23 Pa.C.S. §5337(h).

This Court did not explicitly consider any custody factors because it did not make a custody award in denying the Second Petition. There is no need to make a custody

determination between Plaintiff and L.P. in this PFA matter. In strictly construing 23 Pa. C.S. § 6108(a)(4), this Court is constrained from making any custodial award of T.V., even if it found in favor of Plaintiff, as this case does not involve allegations of abuse by a natural parent or against a natural parent. In the matter at bar, L.P., as T.V.'s mother, is an interested party to any custody determination and her due process rights would be impaired without her ability to be heard. Moreover, Plaintiff considered the distinctions between the PFA Act and Child Custody Act when Plaintiff filed a Petition for Emergency Special Relief in Custody at B.V. v. L.P, 2020-FC-40185 simultaneously with the Second Petition against Defendant. Thus, this Court did not err when it failed to apply the relocation factors set forth at 23 Pa.C.S. §5337(h) or the child custody factors set forth at 23 Pa. C.S. § 5328(a).

## III. CONCLUSION

For all the above reasons, this Court did not err or abuse its discretion in denying Plaintiff's Second Petition seeking a PFA Order on behalf of T.V. Nor did this Court err or abuse its discretion in denying Plaintiff's Petition for Contempt of the Civil Stay Away Agreement adopted as an Order of Court following the filing of the First Petition. The parties remain bound by the terms of the Civil Stay Away Agreement that have not expired.

BY THIS COURT:

_____, J.
HONORABLE JULIA K. MUNLEY

*cc:*     *Written notice of the entry of the foregoing Opinion has been provided to each party pursuant to Pa. R. Civ. P. 236 (a) and (d) by transmitting time-stamped copies to:*

Catherine A. Gallagher, Esq.
416 Jefferson Ave.
Scranton, PA 18510
**Attorney for Plaintiff**

Corey J. Kolcharno, Esq.
1711 Main St.
Blakely, PA 18447
**Attorney for Defendant**

Jennifer McCambridge, Esq.
222 Wyoming Ave.
Scranton, PA 18503
**Guardian ad Litem for T.V.**